(87 South. 328)

### CRENSHAW v. STATE. (3 Div. 474.)

(Supreme Court of Alabama. Jan. 27, 1921.)

1. Homicide ⚖➡268—Evidence held sufficient for submission of case to jury.

In prosecution for murder, evidence, all of which, with the exception of alleged admissions by defendant, was circumstantial, *held* sufficient for submission of question to jury.

2. Criminal law ⚖➡1153(2) — Competency of children discretionary with court.

In passing initially upon the competency of children as witnesses, much must be left to the sound legal discretion of the trial court, and it is only in strong cases that the ruling admitting them as witnesses should be reversed.

3. Witnesses ⚖➡40(1)—Young girl held competent witness, notwithstanding discrepancy of testimony.

In homicide prosecution, admission of testimony of six or eight year old girl *held* proper, in view of her voir dire examination, notwithstanding that during her examination she at first said that she did not know the man she saw leave deceased's premises, and later

testified that such person was the defendant; such discrepancy going to the credibility of the testimony and not its competency.

4. Criminal law ⚖➡406(3), 516 — Statement that defendant saw another person commit crime not a confession, but admissible only if voluntarily made.

Statements of defendant to officers who arrested him for murder that he did not participate in the murder, but saw another person commit the crime, were not a confession, but were in the nature of a confession, and the officers' testimony as to statements was admissible only after evidence had been introduced showing that statements were voluntarily made.

5. Criminal law ⚖➡736(2)—Whether defendant had voluntarily made statements to officers making arrest held for jury.

In homicide prosecution, where there was evidence authorizing the trial court to decide prima facie that statements by defendant to officers making arrest were voluntary on the part of defendant, it is for the jury to decide whether the statements were in fact made, or whether, if made, they were voluntarily made.

6. Criminal law ⚖➡406(3)—Voluntary character of statements by defendant to arresting officers not affected by subsequent treatment.

Treatment of defendant by officers who had arrested him after he had made certain statements to the officers would not affect the voluntary character of such statements made prior to such treatment.

7. Criminal law ⚖➡1169(2)—Admission of testimony as to facts previously testified to without objection harmless.

The admission of testimony, if error, was harmless, where the same witness had previously testified to same facts without objection.

8. Criminal law ⚖➡419, 420(10)—Testimony as to what officer told defendant's sister as to what defendant had been told as to cause of arrest hearsay.

In homicide prosecution, testimony as to what police officer had told defendant's sister in recital of what he or some other officer had previously told defendant as to cause of his arrest *held* inadmissible, being hearsay.

9. Homicide ⚖➡174(7)—Defendant entitled to explain removal from neighborhood of crime.

In homicide prosecution, where it had been shown that defendant left the place where he lived the evening or night of the day during which the homicide had been committed and had gone to certain city, refusal to permit defendant to answer question of how long before the day of the homicide he had told other persons that he was going to such a city *held* error; the defendant being entitled to offer whatever explanation he had of his departure from the neighborhood of the crime, to remove any unfavorable inference therefrom.

10. Homicide ⚖➡339—Exclusion of testimony as to length of time previous to homicide defendant had told others that he was going to leave neighborhood held reversible error.

In prosecution for homicide, where it had been shown that defendant had left the neigh-

---

borhood of the crime during the evening or night of the day on which the homicide had been committed, refusal to permit defendant to testify as to how long before the day of the killing he had told others that he was to leave neighborhood was reversible error, notwithstanding other testimony that at particular times before the day of the homicide he had told others that he intended to leave the neighborhood.

Appeal from Circuit Court, Butler County; A. E. Gamble, Judge.

Jake Crenshaw was convicted of murder, and he appeals. Reversed and remanded.

Beddow & Oberdorfer and Roderick Beddow, all of Birmingham, for appellant.

The question to the witness Robbins, "Did he make a statement?" was error, since, it called for a confession, since all confessions are prima facie not admissible in evidence. 16 C. J. 715, and authorities there cited; 144 Ala. 106, 42 South. 30; 83 Ala. 1, 3 South. 749, 3 Am. St. Rep. 682. The court erred in permitting the witness Stallings to say that the shoe fit the track perfectly. 77 Ala. 66; 97 Ala. 40, 12 South. 164, 38 Am. St. Rep. 145; 105 Ala. 128, 17 South. 99; 118 Ala. 85, 23 South. 776; 16 Ala. App. 263, 77 South. 245; 181 Ala. 19, 61 South. 263; 174 Ala. 63, 57 South. 245. Court erred in permitting the child to testify. 37 W. Va. 565, 16 S. E. 803, 19 L. R. A. 605; 63 Ala. 52, 35 Am. Rep. 4; 88 Ala. 181, 7 South. 38; 136 Ala. 58, 34 South. 177. Court erred in not permitting the defendant to show his purpose to go to Birmingham, expressed prior to the killing. 16 C. J. 553; 108 Mo. 424, 22 S. W. 89; 183 Ala. 66, 63 South. 8. Counsel discuss other assignments of error, but without further citation of authority.

J. Q. Smith, Atty. Gen., for the State. No brief reached the Reporter.

McCLELLAN, J. [1] This appellant has been adjudged guilty of the murder (first degree) of Mrs. Laura Gafford. She was killed on Sunday, May 16, 1920, some time after 2 p. m., at her residence on a plantation in Butler county. When found late in the afternoon of that date, she had probably been dead several hours. The body bore evidence of brutal mutilation and of blows on the head and face from a heavy, blunt instrument, and a piece of iron, customarily used as a fire poker, was found near the body in the hallway of the dwelling. Her daughters left Mrs. Gafford alone at her home, preparing to bathe, when they departed for church shortly after 2 o'clock p. m. The corpus delicti was conclusively proven. Whether this appellant was the guilty agent or a participant in the brutal murder of Mrs. Gafford was, under the whole evidence, a question for the jury to decide. Aside from

incriminatory admissions or statements in the nature of confessions, attributed to appellant by witnesses for the prosecution— admissions or statements the appellant denied having made and, also, that he had any connection whatsoever with the homicide—the evidence tending to establish his guilt was purely circumstantial. It may be observed at this point that, there was no application for a change of venue, nor a motion for new trial.

Cammie Cheatham, a negro girl six or eight years of age, according to the testimony, was called as a witness for the prosecution. On her voir dire the court found her to be a competent witness. This examination is recited by the record as follows:

"Q. Where do you live? A. Nearly to Mr. Gafford's.

"Q. Who is your father? A. George Cheatham.

"Q. How old are you? A. Six years old.

"Q. Aren't you more than six? A. No, sir.

"Q. Stand up and let me see how tall you are. (Witness did so.)

"Q. Do you go to school? A. Yes, sir.

"Q. Which school do you go to? A. Pine Top.

"Q. What grade? A. A, B, C.

"Q. First grade? A. Yes, sir.

"Q. Do you go to Sunday school? A. No, sir.

"Q. Do you go to church? A. Yes, sir.

"Q. You held up your right hand just now? A. Yes, sir.

"Q. Do you know what that means? A. Yes, sir.

"Q. What does it mean—does it mean to tell the truth? A. Yes, sir.

"Q. Suppose you didn't tell the truth, then what? A. I don't know.

"Q. What happens to a girl that don't tell the truth? A. Go to the bad place.

"Q. Suppose you tell the truth, then what happens? A. Go to Heaven.

"Q. How long have you been going to school, how many years? A. I have been going about six weeks.

"Q. Learned your A, B, C's? A. Yes, sir.

"Q. How far from here to your house? A. I don't know.

"Q. About how far? A. I don't know.

"Q. How far is it from Mr. Gafford's? A. Nowhere to Mr. Gafford's.

"Q. Right close to it? A. Yes, sir.

"Q. Who lives in the house with you? A. Papa.

"Q. Who else? A. Nobody.

"Q. Nobody lives in the house with you but your papa? A. Mama.

"Q. Who else? A. Clancy.

"Q. How many in the family? A. I don't know.

"Q. You don't know how many brothers and sisters you have got? A. Got three sisters.

"Q. That is enough for one girl? A. Yes, sir.

"Q. How many brothers have you got? A. Five.

"Q. Who is the oldest one? A. Lee.

"Q. Is he a grown son? A. No, sir.

"Q. Bigger than you? A. Yes, sir.

"Q. Who is the next to him? A. Cauler.
"Q. Who is the next to him? A. Clancy.
"Q. Who is next to him? A. Geneva.
"Q. Who is next to her? A. Nobody.
"Q. You? A. Yes, sir.
"Q. Where do you come in at? A. I don't know, sir.
"Thereupon the defendant objected to the examination of this witness 'on this voir dire'; the court overruled the objection and the defendant then and there excepted to the ruling of the court."

[2] In passing initially upon the competency of children as witnesses, much must be left to the sound legal discretion of the trial court, and "it is only in strong cases the ruling of the court admitting them as witnesses should be reversed." White v. State, 136 Ala. 58, 66, 34 South. 177, 180; Beason v. State, 72 Ala. 191, 194; Castleberry v. State, 135 Ala. 24, 28, 33 South. 431; McGuff v. State, 88 Ala. 147, 150, 151, 7 South. 35, 16 Am. St. Rep. 25, where a forceful statement of the wisdom and necessity of taking the testimony of children of tender years, competent as witnesses may be found.

[3] The trial judge had the opportunity to observe this child. The examination on her voir dire does not disclose even an error of judgment in the court's conclusion that she was sufficiently intelligent and realized the duty and obligation of an oath to be allowed to testify before the jury. Wade v. State, 50 Ala. 164, 166; Grimes v. State, 105 Ala. 86, 17 South. 184; White v. State, supra; McGuff v. State, supra; Castleberry v. State, supra; Eatman v. State, 139 Ala. 67, 73, 36 South. 16; Williams v. State, 109 Ala. 64, 19 South. 530. There is, of course, a wide distinction between the issue of competency vel non of a child of tender years to be a witness and inquiries relating to the weight and credibility of testimony given by such a witness. A great deal of the argument for error in allowing this child to testify as a witness, including an extended quotation from the opinion in State v. Michae, 37 W. Va. 565, 16 S. E. 803, 19 L. R. A. 605, is only referable to the reliability of the testimony given by this child—an inquiry very different from that involved in the determination by the trial judge of the child's competency to be a witness. The child was permitted to testify that she saw this appellant leave the premises where Mrs. Gafford was killed immediately after she (the child) had called to Mrs. Gafford from the yard fence, a short distance from the house in which, according to the prosecution's theory, Mrs. Gafford had then been murdered. The appellant denied he was on these premises that day. The credit that might have been otherwise accorded this child's identification of appellant was seriously reflected upon by the fact that the child at first said she did not know who the negro man was she saw leaving the premises on the occasion indicated.

As stated, this went to her credibility, not to the determination of her competency to be a witness.

[4-6] The Jefferson county officers (Tyler and Robbins), who arrested the appellant in that county on Thursday morning following the homicide on Sunday, were examined for the prosecution. They testified, in effect, among other things, that appellant, shortly after his arrest, stated in their presence that he did not participate in the assault upon and murder of Mrs. Gafford, but that he saw another unknown (to him) negro chauffeur, whom he called Walter, commit the crime. While not a confession, this matter was in that nature; and it was only admissible after evidence that these statements, attributed to appellant but denied by him, were voluntarily made. Shelton v. State, 144 Ala. 106, 42 South. 30; McGehee v. State, 171 Ala. 19, 55 South. 159. Whether they were, in fact, made by appellant was a controverted issue, to be decided by the jury; and whether, if made at all, they were voluntarily made, was likewise an inquiry for the jury to determine. There was evidence authorizing the trial court to decide prima facie, on the admission of these matters, that the indicated statements were (if made) voluntary on the part of the appellant. These officers were testifying within a month after the day on which they testify this appellant voluntarily made the very damaging statements summarized above, but, while agreeing in the substance of their respective recitals of what appellant said, it is to be regretted that their testimony touching this vitally important feature of the evidence was otherwise affected with such at least apparent inconsistencies as to cast doubt upon the accuracy of the testimony they gave; but this condition did not go to impair the basis for the trial court's conclusion that a proper predicate had been laid for the admission of the incriminatory statements these witnesses attributed to the appellant. What, according to some of the testimony of the officers, took place when the prisoner was required, en route to the jail, to get out of the automobile and was asked questions under menacing circumstances—to induce a further explanation of what "Walter" he had previously referred to—was after the indicated incriminatory admissions' were made, and hence did not serve to impeach or to impair the predicate already efficiently laid to admit the previously made incriminatory statements with respect to the prisoner's presence on the occasion of the homicide. There was therefore no error in admitting testimony reciting the statements attributed to the prisoner when they were first made.

[7] On the examination in chief of Dan Stallings, a witness for the prosecution, he was permitted to testify (Transcript, page 17) without objection, that on Saturday after the

homicide one of the shoes belonging to the appellant was put in a track in the "cotton row" back of the Gafford home, and that it "fit the track perfectly." Stallings, being later recalled by the state, repeated this testimony, in response to a question designed to elicit this statement, to which appellant objected on the grounds that it called for the opinion of the witness, and that the "track" was not shown to have been in the same condition as on the day of the murder. Motion to exclude the reiterative answer was overruled. This matter of evidence had, as appears, already been admitted to the jury without objection, and hence the overruling of the belated objection and of the motion to exclude was, if error, obviously without prejudice to the appellant.

[8] What Patterson, another officer, told the appellant's sister in recital of what he or some other officer had previously told appellant of the cause of his arrest was wholly hearsay and incompetent, and was excluded without error.

[9, 10] It was admitted that appellant, who lived a mile or so from the home of Mrs. Gafford, attended a negro church service in the neighborhood on the day she was killed. It was shown, without dispute, that appellant left the place where he lived on that evening or night to go to Birmingham the next morning by railroad from Greenville; that he spent that night (Sunday) with some of his kin or friends a mile or more nearer Greenville than the place where he lived; and that early the next morning (Monday) he went to Greenville, over the public highways, where he bought a ticket to Birmingham, took the train soon after, and arrived in Birmingham shortly after noon of that day. The evidence of the prosecution relating to these movements of the appellant from the neighborhood of the crime bore the implication of flight, a circumstance of extremely unfavorable effect, if the appellant's movements and departure were interpreted by the jury in accordance with the prosecution's theory that a consciousness of guilt inspired them. In this state of the evidence the following question was propounded to the appellant, and on objection without any statement of ground was disallowed by the court: "How long before this Sunday that you went to church had you told some of them that you were going?" The appellant was entitled to offer whatever explanation he had of his movements about the departure from the neighborhood of the crime, to the end that any unfavorable inference therefrom might be removed. The question quoted was designed to elicit his statement of the time—previous to the Sunday Mrs. Gafford was killed—he told others of his purpose to go to Birmingham. It was error to deny him this element of evidence whereby his departure and arrangements therefor could be referred to an innocent plan rather than to a consciousness of guilt. Goforth v. State, 183 Ala. 66, 68, 69, 63 South. 8; 16 C. J. 553. The fact that he was allowed to show, through himself and others, that he had told them on the previous Friday, or at other times, that he intended to go to Birmingham, or that he was arranging to go there, did not take the place of the matter sought to be elicited by the quoted question—a question designed to draw out evidence of the prior period during which he had entertained and stated his purpose to leave the community and go to Birmingham.

The other two matters argued in the brief for appellant are without any merit. The charge refused took no account of the incriminatory admission to which the witness Harris testified, and yet would have excluded all such admissions on an entirely disassociated hypothesis.

For the error indicated, the judgment is reversed and the cause is remanded.

Reversed and remanded.

All the Justices concur.