39 So.2d 24

**FULLER v. STATE.**

2 Div. 784.

Court of Appeals of Alabama.
Dec. 14, 1948.

Rehearing Denied Jan. 11, 1949.

D. M. Boswell, of Butler, and Ward & Ward, Tom B. Ward, and Tom B. Ward, Jr., all of Tuscaloosa, for appellant.

A. A. Carmichael, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant's jury trial on an indictment charging him with larceny of 1271 feet of hardwood logs of the value of $50.84 resulted in a verdict of guilty and the imposition of a sentence to the penitentiary for a term of five years.

Evidence of substantial probative value tending to establish the appellant's guilt was given by only two of the witnesses introduced by the State, namely Mr. R. A. Mann and Mr. J. T. Culpepper.

Mr. Culpepper has been indicted for the larceny of the same logs alleged to have been stolen by this appellant, and under the evidence adduced by the State is an accomplice of this appellant.

Mr. Mann, a saw mill operator, testified that he had bought the timber but not the land on the Ganguet place in Sumter County, Alabama in 1946.

He and appellant entered into an agreement whereby appellant was to cut this timber and haul the logs to Mr. Mann's saw mill, which was about 14 miles distant from the timber. Under the agreement Mr. Mann was to furnish the teams and trucks, and appellant was to receive $15 per thousand feet of logs delivered to the mill.

After the logging operation was under way Mr. Mann discovered that one load of logs had been sold to the Great Southern Box Company by J. T. Culpepper, employed by the appellant as one of the men to haul the logs from the Ganguet tract to Mr. Mann's mill.

Mr. Mann apprised the appellant of this fact and according to Mr. Mann: "I told him about the load of logs that went to the veneer mill that Mr. Culpepper carried there, and I said 'Mr. Culpepper admits he carried them there and he also implicates you.' "

Mr. Mann said that "At that particular time he (appellant) only hesitated just a minute or two and drove right off and hollered back he would see me * * *."

On cross examination Mr. Mann testified that at this conversation the appellant "got mad" at him, and said there was going to be a settlement and a reckoning.

The above conversation was had between Mr. Mann and the appellant on 12 October 1946. The next morning again, according to Mr. Mann, the appellant "drove up in front of my office about nine o'clock in the morning and got out of his car. I was standing in front of my office, and he went up on the porch and says, 'I got your money,' that 'that boy admitted to me he did take those logs and here's your money,' and he counted the money out $50.84 for that load of logs, and I gave him a receipt for it. He left and that was all that was said about it at that time."

The witness J. T. Culpepper testified that the appellant had employed him to drive

a truck and haul logs from the Ganguet tract to Mr. Mann's mill. He was so employed for about two weeks in the fall of 1946. During his employment he, at the appellant's instructions, carried one load of logs to the Southern Box Company mill in York, Alabama, and sold the same to the Box Company. He received a check, payable to himself, in the amount of $50.84, for this load of logs. He endorsed and cashed the check, and turned the entire proceeds over to the appellant.

Testifying in his own behalf the appellant denied he had ever told Culpepper to haul any logs to the Southern Box Company, or to any place other than Mr. Mann's mill. He likewise denied he had received from Culpepper any part of the proceeds of the load of logs sold by the Culpepper to the Box Company.

In his argument appellant's counsel contended that under the facts above shown that appellant might, if the State's evidence be believed under the required rule, be guilty of embezzlement, or of the statutory offense of trespass by cutting timber, as denounced by Section 427, Title 14, Code of Alabama 1940, but that the facts of this case do not constitute larceny.

■ It is inferable from the evidence that after these trees were cut the logs were "bunched" prior to being hauled away. We conclude therefore that there can be no doubt but that the logs having been severed from the land, and "bunched" for some indefinite time prior to being hauled away were personalty, and therefore subjects of larceny.

■ From the meagre facts presented as to the duties and liabilities of the parties under the agreement between Mr. Mann and appellant we infer that this appellant had the right to enter the tract of timber, cut trees, and haul the logs secured therefrom to Mann's mill. Appellant's compensation was dependent on the amount of logs delivered at the mill. No duty to deliver any certain amount of logs was imposed on the appellant. He might fail to deliver any logs, and in nowise breach the agreement. It would appear that the agreement merely gave appellant a license to enter Mann's tract of timber and cut trees, the logs procured thereby to be delivered by appellant to Mann's mill. Under the facts now disclosed by the record we conclude that appellant's status as to the logs was that of a custodian, rather than a bailee. His conversion of the logs if done with a felonious intent constituted larceny. Brown v. State, 30 Ala.App. 27, 200 So. 630; Washington v. State, 106 Ala. 58, 17 So. 546; Sweeney v. State, 25 Ala.App. 220, 143 So. 586.

If the conviction in this case is to be sustained it must rest upon the testimony of the witness Culpepper, clearly an accomplice of this appellant under the evidence presented. A serious question arises as to the sufficiency of the evidence presented by the State tending to corroborate Culpepper's testimony. Only Mr. Mann gave any testimony that can be considered as tending toward such required corroboration, and this consists of Mr. Mann's account of his conversation with the appellant on 12 October 1946, and the appellant's conduct the following day in offering to and actually paying for the logs converted by his truck driver Culpepper.

■ In Sorrell v State, 249 Ala. 292, 31 So.2d 82, 83, Justice Simpson wrote: "The corroboration necessary to support the testimony of an accomplice must be of some fact tending to prove the guilt of the accused. It is not sufficient if it is equivocal or uncertain in character and must be such that legitimately tends to connect the defendant with the crime. It must be of a substantive character, must be inconsistent with the innocence of the accused and must do more than raise a suspicion of guilt." Numerous authorities from this and other states are cited in support of the above enunciated principle.

■ Measured by the above test we conclude that Mr. Mann's account of the conversation with the appellant on 12 October contains no inferences of sufficient probative value to establish a corroboration of Culpepper's testimony. According to Mr. Mann this conversation was a hurried one. The appellant got mad, and said there would be a reckoning and a settlement. Had appellant remained silent some inference could have arisen therefrom. The

appellant did not remain silent. We find no inferences from his conduct on this occasion.

The question still remains as to whether the appellant's offer on the following day to pay for the logs sufficiently corroborates Culpepper's testimony. Had objections to such line of testimony been made they would properly have been sustained, as offers of compromise, even in criminal cases, cannot be shown under the doctrine prevailing in this State. Sanders v. State, 148 Ala. 603, 41 So. 466; Vowell v. State, 20 Ala.App. 322, 101 So. 780. No objection was however interposed, and such evidence is therefore before us. Did this evidence corroborate the witness Culpepper to an extent sufficient to meet the requirements of Section 307, Title 15, Code of Alabama 1940?

In determining the sufficiency of corroborative testimony the entire conduct of an accused within reasonable time limits of the date of the offense may be examined.

Whether there is any evidence corroborating the accomplice witness, and tending to connect the defendant with the commission of the offense is a question of law for the court, but the weight and sufficiency of such evidence is a question for the jury. Slayton v. State, 234 Ala. 1, 173 So. 642, and cases therein cited. We are unwilling to say that the lower court erred in determining as a matter of law that the appellant's action in paying for the logs, after he had been informed that he was implicated in their theft, did constitute a corroboration of the accomplice Culpepper's testimony and tended to connect this accused with the theft of the logs. Such evidence being admitted, clearly it was within the province of the jury to conclude that such action by the accused evidenced a consciousness of guilt, reasonably tended to connect the accused with the offense charged and corroborated the testimony of Culpepper. As stated by Chief Justice Brickell in McAdory v. State, 62 Ala. 154:

"Any indications of a consciousness of guilt by a person suspected of or charged with crime, or who may after such indications be suspected or charged, are admissible evidence against him. The number of such indications it is impossible to limit, nor can their nature or character be defined. Presumptions or inferences may be, and often are, founded on circumstances which, of themselves, independent of the accusation, would not be ground of crimination. It is largely a question of fact, rather than a question of law, for the determination of the jury, whether particular conduct, or particular expressions of the accused, refer to a criminal offense, and spring from his consciousness of guilt. When it is clear that they have no relation to the offense, and that they ought not to have any influence with the jury, it is the duty of the court to reject them as evidence. *But however minute or insignificant they may be, shedding but a dim light upon the transaction, if they have a tendency to elucidate it they must be admitted.* They may be connected with other circumstances which will constitute a chain of evidence, leading the mind to a satisfactory conclusion." (Italics ours.)

During the examination of State's witness, J. T. Culpepper questions were propounded to said witness as to whether he had not on the morning of this trial made a statement in the office of his attorney, Mr. Tom Seal, within the hearing of Clyde Fuller or Howard Fuller, to the effect that Mr. Mann had told him (Culpepper) that if he would testify against this appellant he (Mr. Mann) would see that the case pending against him (Culpepper) did not hurt him.

The witness Culpepper gave evasive answers to all such questions. This line of questioning and the witness' evasions consumes some four or five pages of the record. Toward the end the Solicitor and Mr. Seal interposed an objection on the ground that the statement constituted a privileged communication between attorney and client. The court sustained the objection and an exception was duly reserved.

Howard Fuller, a witness for the defense, testified that earlier on the morning that this case was called for trial he and Clyde Fuller, his brother, had gone to the law office of Mr. Tom Seal, an attorney.

at law in Livingston, Alabama. Mr. Seal spoke to them on their arrival and told them to take a seat. The witness Culpepper was in Mr. Seal's office, together with two more people unknown to the witness. The record then shows the following:

"The Defendant then propounded the following question to the witness: 'I will ask you if, while you were sitting there, and in the presence of Tom Seal and in the hearing of you and Clyde Fuller, if Mr. Culpepper made the statement to Mr. Seal that he and Mr. Mann had agreed that, if he would go ahead and swear against Elmer Fuller and help convict him, he would see that Mr. Culpepper's case didn't hurt him?' The Solicitor objected to the question upon the grounds that the same was incompetent, immaterial, irrelevant and illegal, and that it was a conversation between attorney and client and was a privileged communication. The Court sustained the objection, and the Defendant excepted to the ruling of the Court."

The court also sustained the State's objections to several questions propounded to witness Howard Fuller seeking to elicit testimony to the effect that the witness and Clyde Fuller had gone to Mr. Seal's office for the purpose of employing him to represent this appellant in this case.

The defense should have been permitted to lay the predicate they sought in the question propounded to the witness Culpepper concerning the statement he was alleged to have made in Mr. Seal's office, and further, should have been permitted to interrogate the witness Howard Fuller as to this matter.

The principle concerning the question now being considered is clearly stated by Mr. Justice McClellan in Cotton v. State, 87 Ala. 75, 6 So. 396, 397, and is as follows:

"The rule as to the inviolability of professional confidences applies, as between attorney and client, only to communications made and received for the purposes of professional action and aid, and the secrecy imposed extends to no other persons than those sustaining to each other the confidential relationship, except the necessary organs of communication between them, such as interpreters, and their own agents and clerks. If the parties choose to hold their conferences in the presence and hearing of third persons, whether they be officers of the law, and as such, charged with the custody of the client, and hence necessarily present, or indifferent bystanders, there is no rule of law which forbids such third persons to depose to facts thus coming to their knowledge."

Application of the above doctrine compels the conclusion that the court's ruling in the two instances above set forth was erroneous. See also to like effect Phillips v. State, 11 Ala.App. 168, 65 So. 673.

This cause must therefore be reversed and remanded, and it is so ordered.

Reversed and remanded.