[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 888 
The appellant was indicted and convicted for burglary in the third degree. Ala. Code § 13A-7-7 (Supp. 1979). Sentence was seven years' imprisonment.
Omitting its formal parts appellant's indictment reads as follows: (R. 7)
 "The Grand Jury of said County charge that before the finding of this indictment George L. Ware whose name is otherwise unknown to the Grand Jury, did, knowingly enter or remain unlawfully in a building, to wit: Piggly Wiggly of Linden, Inc., with intent to commit a crime therein to wit: theft of United States currency and coins and merchandise in violation of 13A-7-7 of the Code of Alabama, against the peace and dignity of the State of Alabama."
Moundville Police Chief Raymond A. Robinson testified that he received a radio dispatch at 3:05 a.m. on March 31, 1980, directing him to a Ford pickup truck on Highway 69. Michael Springfield was the driver of the truck. The truck was carried to the Moundville Police Station and its contents inventoried. Chief Robinson stated that various merchandise was found in the truck, including meat, flashlight batteries, watches and cigarettes. Also included in the items discovered were several burglary tools.
On cross-examination it was learned that Springfield had attempted to bribe arresting officer John Seaton with money found in a bag in the back of the truck. Chief Robinson stated that the burglary tools "were mixed in with the stolen stuff out of Linden." (R. 60) He further stated that "drills, hacksaws, and these books, safe books, were in the truck with them . . . Michael Springfield said they were used down here." (R. 60) Chief Robinson did not see appellant that night.
Sergeant B.S. Tucker of the Linden Police Department testified that at approximately 4:00 a.m. on March 31, 1980, he found the Linden Piggly Wiggly in Marengo County "broken into." (R. 64) Sergeant Tucker stated that the locking mechanism to the front door "had apparently been stripped out because it was open." (R. 65) Sergeant Tucker first noticed black looking water leading to the office door. Sergeant Tucker next found a big hole burned in the safe and the safe door open, the office strewn with papers and the cash register drawers open. He then discovered that the "meat case was cleaned out." (R. 66) Sergeant Tucker also discovered some meat and a Timex watch outside the back door.
Mr. W.T. Glass, owner of the Piggly Wiggly, testified that he identified various items of merchandise at the Moundville Police Department that had been taken from his store during the burglary. Mr. Glass stated that the meat counter had been "loaded" with meat when the store closed on Saturday night before the burglary, but was empty Monday morning. He testified that his store was broken into on Sunday night because the butcher had gone to the store that afternoon between five and five-thirty. Mr. Glass further testified that ten thousand dollars was kept in the safe and that the burglars "got all the money." (R. 73)
Investigator Dennis Mason of the Marengo County Sheriff's Department testified that when he arrived at the Piggly Wiggly the morning of the burglary he found the store in shambles. He saw that the safe had been cut open "with some kind of burning instrument." (R. 76) Investigator Mason made photographs of the safe and of various merchandise and other items which had been recovered at the Moundville Police Department.
Mr. Bill Drinkard, the Piggly Wiggly market manager, stated that he went to the store on Sunday afternoon around five to six p.m., as was his custom, and generally observed the store. Everything appeared *Page 889 
to have been in the same condition as it had been the previous evening when the store closed. Mr. Drinkard then testified as to the condition of the store Monday morning after the burglary. He estimated that the value of the meat taken alone was between thirty-five hundred and four thousand dollars.
Miss Catherine Kendall McColeman testified that she was living at the Old Country Inn in Linden during March of 1980. Miss McColeman learned that the Piggly Wiggly was burglarized on Sunday night, March 30, while living at the motel. Miss McColeman stated that on Saturday evening before the burglary, between seven and nine p.m., she followed a green Pontiac Firebird with a North Carolina license tag into the motel parking lot. She noticed that the Firebird "parked on the other side at the very end of the motel" next to "a black truck with a white camper." (R. 95) Miss McColeman identified the pickup truck as being the same one in which Springfield was apprehended. Miss McColeman saw two males exit the Firebird and go to their room.
On Sunday afternoon, between three and five p.m., Miss McColeman saw the pickup truck pull in front of the motel, and the appellant exit the vehicle. Appellant asked her what time it was. Miss McColeman stated that she had no question in her mind about appellant's identity.
Investigator Norman Lindsey of the Department of Public Safety testified in pertinent part concerning the chain of evidence between Linden and Moundville.
Ms. Dianne Sciara testified that appellant purchased various locksmith tools at Lock and Key Wholesale Distributors in Birmingham. Ms. Sciara stated that the first time appellant came into the store was March 18, 1980, that he came into the store twice that day and that she made out two tickets for the items purchased. Appellant came back the next day, March 19, and made additional purchases. Among the items purchased were a re-keying kit, a "SlimJim" car opening tool, lock picks, a home saw, tension wrenches, lock pliers, a ring depression tool, a lock cap and a set of double sided picks. Ms. Sciara saw appellant in the store a total of four times.
On cross-examination Ms. Sciara explained that Lock and Key Wholesale Distributors sold merchandise to locksmiths and that appellant was a licensed locksmith in Jefferson County. Ms. Sciara stated that appellant gave her his business card which read "Marshall Lock and Alarm Company." Ms. Sciara then testified that appellant made further purchases on April 9, 1980 — "Mostly the same things that he purchased 3/18 and 3/19." While Ms. Sciara could not say positively that the burglary tools introduced into evidence came from Lock and Key Wholesale Distributors (the tools did not have serial numbers or other identifying marks), she did state that the tools were "just exactly like the ones" appellant purchased. (R. 116)
Ms. Judy O'Daniel, also of Lock and Key Wholesale Distributors, testified that she, too, had seen appellant in the store and that she had written an invoice for purchases appellant made on April 9, 1980.
Investigator O.E. Billingsley, III, of the District Attorney's Office for the Seventeenth Judicial Circuit testified that as part of his investigation of the Piggly Wiggly burglary he made pictures of a Firebird parked in front of the McAlpine Village Apartments in Hoover in Jefferson County. He also made a picture of appellant's residence in Hoover.
On cross-examination Investigator Billingsley stated that the Firebird was registered to May Ferguson Willis, a relative of appellant's wife, in Moorehead City, North Carolina.
Michael Springfield, an admitted accomplice to appellant's burglary of Piggly Wiggly, testified that he had nine or ten felony convictions in addition to his conviction for the Piggly Wiggly burglary. Springfield stated that he had known appellant "about a week" prior to March 31, 1980, that he met him when he got out of the Jefferson County Jail. Appellant had helped arrange Springfield's bond. Springfield testified he *Page 890 
"had learned through sources" that appellant "was an expert" in turning off burglary alarms and opening safes. (R. 155)
Springfield admitted that he and appellant had conversations concerning burglaries and places where burglaries could be committed. "We discussed a few things, and I told him that I was going turkey hunting down in this part of the country and he asked me to look at a Piggly Wiggly on the outside of Linden. . . . And, so I looked at it and he told me to call him. . . ." (R. 135) Springfield stated that he called appellant from Thomasville: "I just told him that the Piggly Wiggly didn't have a burglary alarm on it." (R. 136) Springfield made a general surveillance of the Piggly Wiggly and went inside during business hours.
Springfield met appellant in Thomasville around 7:00 p.m. the night before the burglary. Springfield stated that appellant was travelling in a green Pontiac with a North Carolina tag. Appellant was accompanied by one Cecil Sherril. Springfield was driving the previously referred to pickup truck. Springfield stated that from Thomasville the group travelled to Linden, then to Demopolis and back to Linden where they spent the night in a motel near the Piggly Wiggly.
Springfield testified that on Sunday the Piggly Wiggly was closed, that they did not do "too much until Sunday evening." (R. 141) Springfield next stated that appellant was in possession of the burglary tools previously admitted into evidence. "He had them with him when he came down here to meet me. . . . I can't remember, you know, each individual item, but a mass of burglary equipment." (R. 142) The appellant also had acetylene burning equipment in the trunk of the Firebird which was used in opening the safe. Springfield further stated that after the burglary was committed, appellant's burglary tools were placed in the back of the pickup truck.
Springfield next testified as to the details of the burglary. Suffice it to say that appellant played an instrumental role in accomplishing the crime. Not only did appellant break and enter the store and burn open the store safe, he also helped load the stolen property onto the pickup truck.
After the burglary appellant and Sherril followed Springfield and an unnamed party out of Linden. Before the group got to Moundville, appellant "flagged" Springfield down and told him "he had left something inside the store that he needed to get that could be traced." (R. 148) At that point Sherril got in the truck with Springfield and the unnamed party got in the car with appellant. The two vehicles then proceeded in opposite directions. Springfield further admitted that he had attempted to bribe a police officer in Moundville at the time he was arrested.
Chief Robinson was recalled and testified concerning certain acetylene and oxygen bottles found in the truck Springfield was driving. It was determined that this burning equipment had been stolen out of a burglarized building in Jackson.
On re-cross Chief Robinson stated that thirty-three or thirty-four hundred dollars was recovered in the back of Springfield's truck.
Investigator Mason was then recalled and offered testimony that he had taken photographs of Springfield's truck which were marked State's exhibits one and two. His testimony concluded the State's case. Appellant's motion to exclude was overruled and the defense rested without presenting any evidence.
 I
Appellant alleges that he was convicted on the uncorroborated testimony of an accomplice, Michael Springfield, in violation of Ala. Code § 12-21-222 (1975). We disagree and find that Springfield's testimony was sufficiently corroborated to sustain appellant's conviction.
Without question, the State's chief witness was Michael Springfield who admitted his participation in the burglary and was an accomplice as a matter of law. Andrews v. State,370 So.2d 320, 321 (Ala.Cr.App.), cert. denied, 370 So.2d 323 (Ala. 1979); Jacks v. *Page 891 State, 364 So.2d 397, 403 (Ala.Cr.App.), cert. denied,364 So.2d 406 (Ala. 1978); Pryor v. State, 47 Ala. App. 706,260 So.2d 614 (1972). As such his testimony requires corroboration. Ala. Code § 12-21-222 (1975).
The test for determining whether there is sufficient corroboration of the testimony of an accomplice consists of eliminating the testimony given by the accomplice and examining the remaining evidence to determine if there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense. Miller v. State, 290 Ala. 248,275 So.2d 675 (1973); Andrews, supra. As this Court stated inAndrews, supra:
 "The corroboration of an accomplice must tend to connect the accused with the commission of the crime but need not refer to any statement or fact testified to by the accomplice. `Corroborate means to strengthen, to make stronger; to strengthen, not the proof of any particular fact to which the witness has testified, but to strengthen the probative, criminating force of his testimony.' Malachi v. State, 89 Ala. 134, 140-141, 8 So. 104, 106 (1889); Smith v. State, 230 Ala. 413, 416, 161 So. 538
(1935); Brown v. State, 31 Ala. App. 529, 19 So.2d 88
(1944). The corroborative evidence need not be strong, nor sufficient of itself to support a conviction, the criterion being that it legitimately tend to connect the accused with the offense. Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973). Corroborative evidence need not directly confirm any particular fact nor go to every material fact stated by the accomplice. Bridges v. State, 52 Ala. App. 546, 295 So.2d 266 (1974); Dykes v. State, 30 Ala. App. 129, 1 So.2d 754 (1941). Corroborative evidence need not directly connect the accused with the offense but need only tend to do so. State v. Canada, 107 Ariz. 66, 481 P.2d 859, cert. denied, 404 U.S. 848, 92 S.Ct. 154, 30 L.Ed.2d 87 (1971). See Pearce v. State, 26 Ala. App. 492, 495, 164 So. 114, cert. denied, 231 Ala. 150, 164 So. 118 (1935) (`(B)ut, as we read the cases, the corroboratory evidence, if it meets the test of "tending to connect the defendant with the commission of the offense", need not be, in and of itself alone, that tending in any wise to fasten guilt upon the defendant'); 23 C.J.S. Criminal Law § 812 (3) (1961). The sufficiency of corroborating evidence is established if its probative value tends to connect the defendant with the commission of the crime. Lowe v. State, 32 Ala. App. 178, 22 So.2d 618 (1945). The corroboration of an accomplice may be shown by circumstantial evidence. Blevins v. State, 56 Ala. App. 115, 319 So.2d 734, cert. denied, 294 Ala. 753, 319 So.2d 739
(1975); Tidwell v. State, 23 Ala. App. 409, 126 So. 186 (1930).
 In certain instances, association with the accomplice tending to show the accused's proximity, chronologically and geographically, to the alleged offense may furnish sufficient corroboration. Ross v. State, 74 Ala. 532 (1883); DeGraaf v. State, 34 Ala. App. 137, 37 So.2d 130 (1948)." 370 So.2d, at 322.
And, as was further stated in Jacks, supra.
 "The corroborative evidence need not refer to particular statements testified to by the accomplice. Skumro v. State, 234 Ala. 4, 170 So. 776 (1936); Malachi v. State, 89 Ala. 134, 8 So. 104 (1889). `It is not necessary that the corroborating evidence refer to any particular statement or fact testified to by the accomplice. If it strengthens the probative criminating force of his testimony and tends to connect the defendant with the commission of the offense it is sufficient to warrant the submission of the issue of guilt or innocence to the jury.' Smith v. State, 230 Ala. 413, 416, 161 So. 538, 542 (1935).
. . . .
 "Additionally, sufficient corroboration of the testimony of an accomplice may be furnished by a tacit admission by the accused, by the suspicious conduct of the accused, and the association of the accused with the accomplice, or by the defendant's proximity and opportunity to commit the crime. Cheatwood v. State, *Page 892 22 Ala. App. 165, 113 So. 482, cert. denied, 216 Ala. 692, 113 So. 915 (1927); 23 C.J.S. Criminal Law § 812 (4).
 `In determining the sufficiency of corroborative evidence testimony the entire conduct of an accused within reasonable time limits of the date of the offense may be examined.' Fuller v. State, 34 Ala. App. 211, 215, 39 So.2d 24, 27, [cert. denied,] 252 Ala. 20, 39 So.2d 29 (1949). An accused's consciousness of guilt as shown by the evidence may be corroborative. Fuller, 34 Ala. App. 215, 39 So.2d 24." 364 So.2d, at 404, 405.
Applying these principles to the facts of this case we have no difficulty in finding that the testimony of the accomplice Springfield was sufficiently corroborated. Under the circumstances of this case the corroborative evidence is inconsistent with the innocence of the appellant and does more than merely raise a suspicion of guilt. Under the facts the guilt or innocence of the appellant was properly submitted to the jury.
 II
Appellant also contends that the trial court erred to reversal in admitting State's exhibits 3 through 10, 16 and 17. Exhibits 3 through 7 consist of the burglary tools and exhibit 8 is the telephone, all found in the back of Springfield's truck. Exhibits 9 and 10 were photographs of the locking mechanism to the safe which was also found in Springfield's truck; however, these two exhibits were subsequently withdrawn from evidence and, thus, will not be further discussed. Exhibits 16 and 17 are the sale receipts from Lock and Key Wholesale Distributors made out to appellant and/or Marshall Lock and Alarm Company. Appellant alleges that these objected to exhibits never properly connected him to the commission of the burglary and should not have been admitted. Again, we disagree.
Exhibits 3 through 7, the burglary tools, were found in the back of Springfield's truck shortly after the robbery. Springfield testified that appellant had the tools with him "when he came down here to meet me." Springfield also testified that appellant left the motel room around 11:00 p.m. to open the door to the Piggly Wiggly and "put the tools in." He was further aware that the burglary equipment was placed in the back of the truck after the burglary had been completed. Ms. Sciara testified that the burglary tools which had been admitted into evidence were "just exactly like the ones" appellant had purchased from Lock and Key Wholesale Distributors. By all fair inferences appellant owned the burglary tools and almost certainly used them in the burglary where he clearly was a participant.
Concerning exhibit 8, the telephone which was found in a blue bag in the truck along with the burglary tools, Springfield testified that when appellant left to open the safe "we were to stay on the phone, inside the motel room, and watch for any police cars, or traffic coming, towards the Piggly Wiggly." (R. 144) Springfield stated that the Piggly Wiggly "was connected to the other end of the phone" he was using. While it cannot be ascertained with certainty that State exhibit 8 was actually used during the burglary, it can be fairly inferred from the evidence that it was. At the very least, exhibit 8 was found along with the burglary tools which were used in the burglary.
Concerning exhibits 3-8, this court held in Burlison v.State, 369 So.2d 844, 851 (Ala.Cr.App.), cert. denied,369 So.2d 854 (Ala. 1979);
 "Articles which are properly identified and which tend to show the commission of the crime, or the manner in which it was committed, or to elucidate some matter in issue, are admissible for inspection and observation by the jury. Lackey v. State, 41 Ala. App. 46, 123 So.2d 186; Franks v. State, 45 Ala. App. 88, 224 So.2d 924. Also, where the evidence is probative of an element of the corpus delicti and of the defendant's participation in the offense, it is relevant and should be admitted. Harris v. State, 57 Ala. App. 558, 329 So.2d 618." *Page 893 
In McCulloch v. State, 338 So.2d 187 (Ala.Cr.App. 1976) the trial court admitted into evidence ski masks, rubber gloves and a mask found in the possession of the accused's accomplice after the burglary had taken place. In holding those items properly admitted this court wrote:
 "As previously indicated, the evidence was sufficient to warrant a finding that there was a burglary and that defendant was a participant in the burglary. The mere fact that the particular items of evidence were found on the other participant does not insulate them from admissibility. They were portions of the circumstances that combined to establish defendant's criminal intent in breaking and entering the store." 338 So.2d, at 188. (Emphasis added).
As stated previously, exhibits 16 and 17 show that appellant purchased locksmith tools shortly before the burglary, which Ms. Sciara described as being "just exactly like the ones" found in the back of Springfield's truck. Furthermore, exhibit 17 demonstrates clearly that appellant attempted to replace certain tools shortly after the burglary which were identical to the tools found in the truck and which were identical to those tools purchased shortly before the burglary. Since appellant participated in the burglary and brought burglary tools with him to Linden which were found in Springfield's truck, the invoices of his tool purchases, both before and after the burglary, were clearly relevant in proving appellant's guilt.
Contrary to appellant's assertion, the burglary tools were definitely connected to him. The circumstances are overwhelming that appellant purchased the very tools found in Springfield's truck shortly before the burglary, used them in the burglary, and then decided to replace them shortly thereafter. As this court stated in Thigpen v. State, 50 Ala. App. 176,277 So.2d 922 (1973), the acts of an accused, before or after the offense, whether part of the res gestae or not, are admissible against him.
Furthermore, the formal introduction of exhibits 16 and 17, which was preceded by detailed testimony concerning the exhibits' true nature, represented no more than the sum of the preceding testimony and did not cause reversible error. Hayesv. State, 395 So.2d 127, 147 (Ala.Cr.App. 1980), cert. denied,395 So.2d 150 (Ala. 1981). The admission of cumulative evidence, even upon an undisputed fact, is not prejudicial error. Robinson v. State, 342 So.2d 1331 (Ala.Cr.App. 1977). In addition, even the erroneous admission of evidence is not ground for reversal, if the same evidence has already been admitted to the jury without objection. Crenshaw v. State,205 Ala. 256, 87 So. 328 (1921); Hayes, supra.
Thus, we find in each instance that the complained of exhibits were properly admitted. Strong circumstantial evidence provides any necessary nexus between the exhibits and appellant which might otherwise be lacking through direct evidence. And circumstantial evidence is entitled to the same weight as direct evidence provided it points to the guilt of the accused.Hayes, supra; Trammell v. State, 377 So.2d 12 (Ala.Cr.App. 1979).
We have examined each issue raised by appellant. In addition, we have searched the record for errors prejudicial to appellant's substantial rights and have found none. The Circuit Court's judgment of conviction is, therefore, due to be affirmed.
AFFIRMED.
All the Judges concur.