SAM TAYLOR, Judge.
John Golden was convicted of robbery in the first degree and sentenced to twenty years in the penitentiary from which he prosecutes this appeal. He asserts several grounds for reversal.
The state’s evidence tended to show that on the 18th of January, 1983, James Bird, Alvin Sellers, and Lehman Tucker met with the appellant, John Golden, at Golden’s house. Golden mentioned that he was due to pay off a fine and suggested robbing the local Jiffy Mart to get the necessary money. A plan was made whereby Bird, Sellers and Tucker would go in the Jiffy Mart and take the money while Golden would be waiting behind a nearby school in the getaway car. Around 10 p.m. appellant drove *1360 the others to the Jiffy Mart. As they were getting out of the car, appellant told Lehman Tucker to take his homemade nightstick from under the car seat. Tucker took the nightstick and passed it to Alvin Sellers who put it in his pants. The three went into the store, cased it, and left. They returned about 11:40 p.m., twenty minutes before closing. They called the state’s witness, Juanita Trawick, over to the ice cream counter. Bird held Miss Trawick while Sellers beat her until she fell to the floor. The three took $655 cash and ran out of the store. Meanwhile, appellant had driven to the nearby school as planned. While appellant was waiting there, he was observed by Officer Stallworth. When the three men ran to the school, they found that the appellant was not there. They went to James Bird’s house and from there to appellant’s house. At Bird’s house they divided the money three ways as previously planned. Each was to give appellant $20 to $30. When they got to appellant’s house, they asked him to drive them out of the county, but he refused to do so because he believed the police were watching his car. The appellant took all of the money and hid it in a paper sack inside a drawer in his house. Lehman Tucker left but James Bird and Alvin Sellers remained at appellant's house until they were arrested about four or five hours later. These three individuals all pleaded guilty to robbery and two of them testified against the appellant at his trial.
I
Appellant first contends that there was no probable cause to arrest him at the time of his arrest. Appellant stated that his wife had been stopped by the police while driving his car around after the robbery. He went to the police station to see if they were looking for him. The Miranda warnings were administered to him. During this time police testified that appellant was not under arrest and was free to leave. Appellant told Investigator Powell that he and one Curtis Tucker had played cards the night of the robbery. The police chief and two other officers went to the north end of town where they picked up Curtis Tucker and Lehman Tucker. At the station, during questioning, Lehman Tucker implicated the appellant in the robbery. Until this point, the appellant, who came to the police station as a volunteer, had not been arrested. The police then placed him under arrest for “investigation of robbery” and took him to jail. Several hours later, at about 8:45 a.m., Police Chief Bundy questioned the appellant. The appellant admitted transporting the other three men to the Jiffy Mart. He said that all of them told him what they were going to do and he told them he was not going to do that. He said he drove to the school, then returned to the store and did not see them so he drove home. They arrived at his house about forty-five minutes later, told him what they had done and that the law was after them and gave him the money, which he put in a drawer in a paper sack. Appellant signed a statement to this effect. He was then charged with and arrested for robbery.
Golden’s first arrest was for “suspicion of robbery.” The police, when they effected this arrest, had been told by Lehman Tucker of the robbery and the appellant’s part in the robbery. They also knew that the appellant was in his car in the area of the robbery at about the time of the crime. This information provided probable cause for the arrest of the appellant.
II
Appellant next contends that the court erred in denying a motion for mistrial because an exhibit had been handed to the jury before being admitted into evidence. The challenged exhibit was the homemade nightstick, state’s exhibit 1. The victim, cashier Juanita Trawick, identified the homemade nightstick as looking exactly like the one with which she was beaten during the robbery. The following occurred:
“MR. HYDE: That’s all.
“MR. OWENS: [Defense Attorney] Judge, I think our objection to the introduction of this stick is still pending.
*1361 “THE COURT: Was it offered?
“MR. PEARSON: [District Attorney] No, sir.
“MR. OWENS: Well, we move for a mistrial on the grounds that it was handed to the jury before it was entered into evidence—before the Court allowed it into evidence.
“THE COURT: I overrule your motion. “MR. OWENS: We except.
“THE COURT: Call your next witness.”
The record does not show at what point the nightstick was handed to the jury. The testimony of the witness formed an adequate basis for reception of the nightstick into evidence. The stick was subsequently received into evidence. Without approving the procedure employed regarding the introduction of the exhibit, the issue was rendered moot when the exhibit was subsequently admitted into evidence.
III
Appellant next contends that the oral charge of the court to the jury was erroneous in that the court charged that the jury had to be “reasonably satisfied” rather than “convinced beyond a reasonable doubt.”
The record reflects that the court, during a long charge, did use the words “reasonably satisfied” but instantly corrected itself, and said “convinced beyond a reasonable doubt.” The manner in which the court corrected the charge, we believe, entirely eradicated any error. See Ala.Digest, Criminal Law, Key No. 823(15).
IV
Appellant asserts that the state failed to present sufficient evidence to overcome a motion for a directed verdict of acquittal. The evidence before the jury consisted of direct evidence of the robbery by the testimony of the victim about the beating and the theft of the money. The evidence of appellant’s participation included the testimony of two accomplices and appellant’s own statement. We find that this testimony constituted more than enough evidence of a violation of § 13A-8-41(a)(1), Code of Alabama 1975, to submit the case to the jury.
V
Appellant argues that there was insufficient evidence to corroborate the testimony of his accomplices. Under the provisions of Code of Alabama 1975, § 12-21-222, appellant’s own statement furnishes sufficient corroboration of the testimony of his accomplices. He admits taking the accomplices to the convenience store, dropping them off and going to the school where he was to pick them up after the robbery to effect their get-away. He admits knowing the money was taken in the robbery and hiding the money in his house. This evidence supplies the requisite tendency to connect the defendant with the crime. See Ware v. State, 409 So.2d 886 (Ala.Cr. App.1981), writ quashed, 409 So.2d 893 (Ala.1982).
We have considered the other contentions of the appellant and find them without merit.
This case is due to be affirmed.
AFFIRMED.
All the Judges concur.