TYSON, Judge.
Michael D. Owen was charged by indictment with unlawfully exerting or obtaining unauthorized control by deception of $10,-000 in lawful currency, the property of Dr. Barry Wilson, with intent to deprive the owner of said property, contrary to § 13A-8-3, Code of Alabama 1975 as amended.
Following a jury trial at which the appellant was found “guilty of theft of property in the first degree”, a sentencing hearing was held. The appellant was then sentenced to three years’ imprisonment in the penitentiary.
A motion for new trial was filed, which was denied, following a hearing thereon. Different counsel represents the appellant on appeal from those attorneys who represented the appellant at trial.
Since the issues raised on appeal do not necessarily involve the weight and sufficiency of the evidence presented by the State, only a brief statement of the facts will be herein set out.
Dr. Barry Wilson testified that he was a practicing physician in Montgomery, Alabama, specializing in obstetrics and gynecology. He stated that the appellant’s wife, Kathy Owen, had been a patient of his for almost five years. He stated that he was aware that she was a sales agent for Lowder Realty Company in Montgomery. He further stated that her husband was working in the real estate business in Gulf Shores, Alabama and that the husband, Michael Owen, had contacted Dr. Wilson with reference to the purchase of a condominium at Gulf Shores. In May, 1983, the appellant had been requested by Dr. Wilson to find a three bedroom condominium for him. In early May, however, Michael Owen called Dr. Wilson and told him he had a two bedroom condominium and that he would suggest that Dr. Wilson purchase this because he had another buyer who would buy this from him within a week or so. Wilson stated that he was to put up a binder of $10,000 and that, within seven to ten days, Mike Owen would turn it over and sell it and the doctor would make $3,000 as profit on the sale of the two bedroom condominium. He stated that this was not the condominium he desired for his family because he had several children and needed a three bedroom unit and had so indicated to the appellant, Michael Owen.
On May 10, 1983, the appellant’s wife, Kathy Owen, came into his office and explained to him that she was going to give him a receipt for his money. He stated that he trusted her because she had been a patient for several years. He stated that he directed his secretary, Mrs. Betty McCoy, to make out a check for $10,000 and turn it over to Kathy Owen to be delivered by her to her husband, Michael Owen. He stated that he then signed the check and that it was to be a binder and *1214 was so marked for unit 31, Las Palmas, Gulf Shores, Alabama. Mrs. Kathy Owen then wrote out a receipt for $10,000, which she gave to Dr. Wilson. It was marked as a binder for unit 31, Las Palmas, Gulf Shores, Alabama. Contract was to follow within two days. It was signed “Gulf Coast Realty, by Kathy Owens.” This was dated May 10, 1983.
Dr. Wilson testified that he was under the belief that the $10,000 check would operate as a binder and would be placed in an escrow account by the appellant, Michael Owen, pending the purchase of the condominium. However, after the seven to ten day period following May 10, 1983 passed and he failed to receive a contract from Michael Owen, he began to try to contact him both through his wife and by making direct calls to Gulf Shores, Alabama. He never received a contract nor did he receive his money back. After several phone calls to the appellant and his wife, he finally received a check which was then deposited in his account with Colonial Bank of Montgomery and returned marked “insufficient funds”. Dr. Wilson then stated he took the matter up with the Alabama Real Estate Commission and that he later was reimbursed the $10,000 through a fund set up by the Alabama Real Estate Commission known as the Real Estate Recovery Fund. Dr. Wilson then identified the various documents which were used in this transaction.
Dr. Ralph Capouya was called by the State as witness for the prosecution. Dr. Capouya stated that he was a practicing dentist in Montgomery, Alabama and knew the appellant, Michael Owen, that Michael Owen had sold and purchased real estate for him over a several year period. He stated that in the Spring of 1983, Michael Owen was indebted to him in the sum of approximately $12,000 to $14,000. He stated that he contacted the appellant and that a check was sent to him by the appellant for $14,000 dated April 4, 1983. He stated that he had to call the appellant several times during the Spring before receiving a check. He stated that he deposited this check to his account and that it was returned marked “insufficient”. He stated, thereafter, he called Mr. Owen several times before finally receiving a second check which he then deposited to his account with Merrill, Lynch in Montgomery and this check, which was for $14,000, cleared. He stated that he contacted the appellant almost a dozen times before finally being reimbursed for the debt owed.
On cross-examination questions were raised concerning other transactions with Dr. Capouya but, since these were not relevant to the time frame or to the period in which the case against this appellant was made, the trial court declined to allow these matters to be raised or presented in evidence.
Tom Lamberth was called as witness for the prosecution. He testified that he was the accountant for Russell Land Company and, in particular, to handle the matters of Mr. Ben Russell, who is president of Russell Lands. He stated during the Spring of 1983 the appellant contacted both him and Mr. Russell with reference to the purchase of certain properties in Gulf Shores, Alabama. He stated that they were called and flew to Gulf Shores on at least two occasions and were taken over the area by Mr. Owen and shown certain properties. He stated that he had formerly known the appellant when he worked at one time for Lowder Realty in Montgomery. He knew that the appellant was working for a different real estate agency in Gulf Shores during this time, however. He stated that on May 10, 1983, he, Mr. Russell and Gene Davenport, the Executive Vice President of Russell Lands, flew to Gulf Shores and there went over several properties with Michael Owen. He stated that they did sign a contract for the purchase of a unit which was a condominium at Las Palmas Condominiums. He stated that the unit was unit 31, Las Palmas Condominiums and the date of the contract was May 9, 1983. He observed Mr. Ben Russell sign it and he witnessed the document. He stated that the appellant called the following day and asked for a binder, which they forwarded to him, of $16,000. He stated that *1215 the $16,000 binder was to be held in escrow pending the purchase of the condominium unit. He stated that Michael Owen represented to them that this unit would be sold and that they were to make $3,000 profit which would be wired to them within ten days. He stated that, when they did not receive payment within ten days, they attempted to contact the appellant at his office in Gulf Shores and were advised that the appellant was in the hospital in Montgomery. He stated that on May 21, 1983, the appellant finally forwarded a check which was subsequently deposited and was returned to his company on May 27, 1983 marked “insufficient”. He stated that they then filed action against Michael Owen with the Alabama Real Estate Commission. He further determined that, when the check did not clear and they failed to receive a contract, there simply was no such unit as unit 31, Las Palmas Condominiums.
The appellant took the stand to testify that, with reference to the transaction with Dr. Wilson, this was a loan from Dr. Wilson, that he had previously done business with Dr. Wilson on other occasions and had indicated to him that the $10,000 was simply to be a loan. The appellant did admit on cross-examination, however, that in his testimony before the Alabama Real Estate Commission he had referred to the $10,000, which his wife had received from Dr. Wilson, as a “binder” on a condominium in Las Palmas Condominiums, Gulf Shores, Alabama.
The State of Alabama presented rebuttal testimony of Mr. Paul Thames of Montgomery with reference to other matters.
I
The appellant argues principally on appeal that it was reversible error for the trial court to admit testimony with reference to other transactions with other investors than Dr. Wilson.
The State of Alabama counters and states that the testimony of Dr. Capouya and Mr. Lamberth were offered by the State to show the plan, design, scheme or criminal intent on the part of this appellant. The State cites us to McElroy’s Alabama Evidence, 3rd Edition, Gamble, § 69.-01(5)(6) and Allen v. State, 380 So.2d 313 (Ala.Crim.App.1979), cert. denied, 380 So.2d 341 (Ala.1980); McDonald v. State, 57 Ala. App. 529, 329 So.2d 583 (Crim.App.), cert. quashed, 295 Ala. 410, 329 So.2d 596 (1975) and Hayes v. State, 384 So.2d 623 (Ala. Crim.App.1979), cert. quashed, 384 So.2d 627 (Ala.1980).
Clearly, the testimony with reference to Mr. Lamberth and Mr. Russell was for the same condominium unit, number 31, at the alleged Las Palmas Condominiums in Gulf Shores, Alabama. The evidence from them and from Dr. Wilson established that, in fact, no such unit had ever been built nor did such units exist. The testimony of Dr. Capouya was admitted with reference to the alleged sale of other units to him by the appellant. Dr. Capouya’s testimony was limited to the time period in which the transaction with Dr. Wilson took place. The State’s purpose in establishing this was to show that the appellant had taken in over $50,000 from three sources within a very short time for units which were nonexistent. We are of the opinion that this testimony was properly admitted into evidence to show the appellant’s fraudulent plan, scheme or design in accordance with the authorities herein cited and Dowdell v. State 480 So.2d 45 (Ala.Crim.App.), cert. denied, [Ms. Nov. 27, 1985, 85-71] (Ala.).
II
The appellant next argues that certain records which were sought from Dr. Ca-pouya through subpoena were erroneously quashed by the ruling of the trial judge and cites us to record pages 91-97.
“THE COURT: If the State is not going into the nature of the debt and the debt is not disputed, I do not think it is relevant to have discussions or elicit testimony concerning other deals. The debt is admitted. If that’s all you are going to establish is that there was a debt owed— which is admitted — as it revolves around their relationship, I don’t think this would be relevant.
*1216 “MR. GLASSROTH: May I suggest a way it might very well be? That is, that if this man who is going to be testifying has a history of dealing with it, and he is so wild about getting money, but he gets money eventually, we can’t limit it to that. There is a whole series. He knows Mike.
“THE COURT: The State is telling me this man will testify he owed me twelve thousand dollars.
“MR. TRAVIS: Fourteen, I believe.
“THE COURT: Which you admitted. I call and demanded payment. Payment was received on May 12. Now if that’s all the State is going to offer, then I don’t think it is relevant for you to go in now — If the State is going to go further and develop the nature of the transaction, and the nature of the business relationship between this witness and the defendant, then I think, yes, this would be relevant to develop because it may affect the—
“MR. TRAVIS: Your Honor, unless the Court instructs me otherwise, I would ask the general question of, Dr. Capou-ya, were you indebted — was Mike Owen indebted to you for fourteen — whatever the figure is and I’ll clarify that — regarding a real estate transaction deal that was done between the two of you.
“MR. GLASSROTH: If he does that—
“THE COURT: I think if that’s the approach you wish to take, I’m going to determine relevance and he may have that document.
“MR. TRAVIS: Your Honor, I will represent to the Court I’ll limit my questions to the fact Mike Owens is indebted to Dr. Ralph Capouya for how much the figure is, twelve or fourteen.
“MR. GLASSROTH: Okay.
“ELLIS HANAN: That’s fine.
“THE COURT: The court will grant the State’s motion to quash.
“MR. GLASSROTH: With the caveat that the testimony will be as represented by Mr. Travis, I trust.
“THE COURT: Well, obviously all of you are officers of this Court. Until you give me reason to believe otherwise, I trust you and believe what you tell me.
“MR. TRAVIS: I don’t want to do anything other than what I represented to the Court.”
(R. 91-93)
As may be seen in examining the above colloquy, the trial court limited Dr. Capou-ya’s testimony to the time frame which was at issue with reference to the transaction with Dr. Wilson.
He determined that based on the representations of the attorneys for both sides that other transactions with Dr. Ca-pouya would not be relevant to the issues of the case at bar. We see no abuse of discretion and are of the opinion from reviewing the colloquy hereinabove quoted that the trial court’s ruling in this regard was correct. Moreover, had counsel for the appellant desired to examine Dr. Ca-pouya with reference to other matters, he had the opportunity to do so on cross-examination.
For the reasons herein stated, we see no error with reference to the trial court’s ruling quashing the subpoena for certain other records of Dr. Capouya.
Ill
Counsel for appellant argues that the testimony of Mr. Edward George, who was the Assistant Executive Director of the Alabama Real Estate Commission, was erroneous and should not have been admitted as this had to do with a transaction before the Real Estate Commission concerning the reimbursement of Dr. Barry Wilson. The testimony in question simply showed that there had been a refund ordered by the Commission paid to Dr. Wilson for $10,000. (R. 135). Moreover, the testimony of Dr. Wilson, himself, with reference to reimbursement by the Real Estate Recovery Fund (R. 25, 26, 31 and 32) came in without objection or motion to exclude on the part of the appellant.
Further, Dr. Wilson was asked questions by the appellant’s counsel with reference to this very matter on cross-examination.
*1217 Since this matter was already admitted into evidence without objection and cross-examination was held thereon, no error appears. Ware v. State, 409 So.2d 886, (Ala.Crim.App.1981), cert. quashed, 409 So.2d 893 (Ala.1982).
In addition, since the matters had already been placed in evidence through the State and the appellant by cross-examination, no error could be assigned to the admission of the testimony with reference to the Alabama Real Estate Commission’s action since these facts were already in evidence through the testimony of Dr. Wilson.
This court has carefully examined this record and finds no error therein. For the reasons stated, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.