1 So.2d 754

### DYKES v. STATE.

#### 4 Div. 665.

Court of Appeals of Alabama.

April 22, 1941.

---

[1] Ante, p. 99.

130

J. N. Mullins, of Dothan, for appellant.

Thos. S. Lawson, Atty. Gen., and Francis M. Kohn, Asst. Atty. Gen., for the State.

**BRICKEN, Presiding Judge.**

Criminal abortion, the offense charged by indictment, against this appellant, is generally regarded as a heinous crime; and, is made a felony under the laws of this State. Section 3191 of the Code 1923, provides: "Any person who wilfully administers to any pregnant woman any drug or substance, or uses or employs any instrument or other means to induce an abortion, miscarriage, or premature delivery, or aids, abets, or prescribes for the same unless the same is necessary to preserve her life and done for that purpose, must, on conviction, be fined not more than five hundred dollars and imprisoned in the penitentiary for not less than two nor more than five years."

Upon the trial of this case, in the court below, the defendant was convicted and judgment of conviction was duly pronounced and entered, from which this appeal was taken.

We find, that the evidence adduced upon the trial was probably without parallel; and, could properly be termed atrocious, loathsome and morbid, depicting as it does a state of unlawful facts, horrible, repulsive, flagrant and vicious in the extreme. All the facts were without dispute or conflict. The defendant offered no testimony.

We will not sully the court's records and reports by a recitation of the evidence in full, it being of the nature and character hereinabove indicated; but we deem it necessary to state the tendency of the State's evidence in connection with the adjudication or decision of the single proposition of law upon which this appeal is rested.

Mrs. Hassie Spann, upon whom the alleged abortion was committed, as the indictment charges, testified directly and emphatically that this appellant came to her house, at the joint request of her husband and herself on the night in question, and in the presence of her husband committed the abortion upon her and as a result of which she delivered, in about two days thereafter, a dead child. That she had been pregnant about five months. That it was not necessary for Mr. Dykes to perform that operation on her to preserve her life. And on cross-examination, this witness testified:

"I am thirty-two years of age. I have some children and I had children before this pregnancy and I wanted to get rid of the baby and the purpose of having this miscarriage produced was because of a wreck that was contemplated and I wanted to be in the wreck and then say that the wreck caused the miscarriage. My husband and I conceived the idea and got Mr. Dykes to come up and perform that operation for the purpose of defrauding some insurance Company and get money by reason of a wreck. We did get some money."

Witness Wess Spann, husband of Hassie Spann, was next introduced by the State, and his testimony corroborated that of his wife in every particular. He testified, among other things: "I am the husband of Hassie Spann and the month of January, 1939, or the first half of that month my wife was pregnant and I knew about the fact. She had been pregnant between four and a half and five months. On or about the middle of January, 1939, James Walter Dykes, the defendant, came to my house near Newville in Henry County, Alabama, and in my presence he did an abortion on my wife. He said she should miscarry something like a day and a half. That was on a Sunday Night between

eleven and twelve o'clock and she did have a miscarriage Wednesday Morning."

And on cross-examination he stated, among other things: "It was done because my wife and I wanted it done in order that we could fake a wreck and get some money from an insurance company. My wife and I conceived the idea of getting rid of our unborn baby so we could pull what they call a fake wreck with an automobile and she could say that out of that wreck she had the miscarriage."

In addition to the foregoing, the State introduced as a witness Dr. C. T. Jones, whose qualifications as a physician were admitted by the defendant. This witness, among other things, testified: "I know Hassie Spann. She lives in Henry County, Ala., I went there January 10, 1939, and when I saw her she was complaining of abdominal pains and she was having slight uterine contractions. I saw her the 10th, 11th, and she had this baby on the 12th. I was present when she had the baby. The baby was about twelve inches long and so far as I noticed that baby was fully developed for a child in that period of pregnancy."

In concluding its case, the State offered a written confession of the defendant, and after several objections, motions, etc., by the defendant, to the introduction of said confession, the trial court held that paragraphs five and nine, only, would be admitted. Sections five and nine are as follows: "Sometime on or about January 16, 1939, I saw Earl Lee Messer on the streets of Dothan, Ala. and he told me that Mr. Wess Spann wanted to see me about performing an abortion on his wife, Hassie Spann. Messer told me to go to Wess Spann's place the first chance I got. I told him all right that I would go up there and perform the abortion. No one else contacted me about performing this abortion until the day that it was performed. On or about January 16, 1939, I went alone in my car to the home of Wess Spann, near Newville, Alabama. When I arrived at Wess's home I contacted Wess Spann and the best as I can remember I told Wess Spann that Earl Lee Messer had seen me and told me to come up there to perform an abortion on his wife. Earl Lee Messer had already told me that he would pay me for performing this abortion and that he would pay me $25.00 for performing the same. After talking the matter over with Wess Spann I went into his home and per-formed an abortion on his wife, Hassie Spann. Wess Spann, his wife, Hassie Spann, and I were the only ones present at the time the abortion was performed. I performed this abortion by inserting a tube up into the womb of Mrs. Hassie Spann. Before inserting the tube, I put it in boiling water and disinfectant. I did not give Mrs. Spann any kind of sedative or medicine to assist her in undergoing this ordeal. It only took me a matter of around 5 or 10 minutes to perform this abortion, and after performing it I left the house. I left this tube in Mrs. Spann's womb and told her to leave it there all night. If this method works it is supposed to produce an abortion in any where from 2 to 5 days. After performing the abortion I did not come back to Spann's home. I saw Earl Lee Messer afterwards and he paid me $25.00 for performing this abortion.

"I have read the foregoing statement and what I have stated therein is the truth, the whole truth, and nothing but the truth, so help me God. No threats or intimidation or promises of reward or immunity have been made to me as an inducement to make this, my free and voluntary confession."

"Signed James Walter Dykes."

The defendant duly and legally objected to the introduction of the portion of the confession above referred to, and reserved proper exceptions to the court's rulings in this connection.

The single point of decision, referred to, was the action of the court in refusing to defendant the general affirmative charge requested in writing by defendant.

In brief and argument by the Attorney General, representing the State upon this appeal, it is urged, in order to sustain the trial court's action in refusing said charge that the court was justified in refusing the charge in question, because of the conflict in the testimony, and in this connection cited, and quoted from, numerous decisions of this court and the Supreme Court. This argument is not well founded, for, as stated hereinabove, the evidence in this case was without dispute or conflict, therefore the authorities cited are not in point on the question involved.

The controlling point of decision involved is correctly stated by learned counsel for appellant wherein it is insisted that there was no sufficient legal evidence to establish the corpus delicti, in the absence of which, the confession of the defendant, above quoted, was improp-

erly and erroneously allowed in evidence. And (2), that in the absence of sufficient legal evidence to prove the corpus delicti, the defendant was entitled to the affirmative charge.

These propositions of law are of course axiomatic, and have long been well established.

The testimony of State witnesses Hassie Spann, and her husband, Wess Spann, conclusively shows that each of them, were accomplices and particeps criminis, also conspirators under the law, in the commission of the unlawful act for which this appellant was convicted. This being true, the rule of evidence established by Statute (Section 5635, Code 1923) must be considered. Said Statute provides: "A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."

The test of whether a witness is an accomplice, within the meaning of the foregoing Statute is, could said witness have been indicted and convicted of the offense charged either as principal or accessory.

Applying this test to the case at bar there appears no uncertainty upon the question, for under the testimony of State witnesses Hassie Spann and Wess Spann, said persons were clearly as a matter of law accomplices of the defendant in the commission of the offense with which he is charged by the indictment in this case. Trent v. State, 15 Ala.App. 485, 73 So. 834.

The remaining inquiry to be determined here is, Was there other corroborating evidence tending to corroborate the evidence of the two designated accomplices who testified in this case?

It has been repeatedly held, and advisedly so, that the corroboration of the testimony of an accomplice need not go to every material fact to which he testifies. If corroborated in some of such facts the jury may believe that he speaks the truth as to all. Montgomery v. State, 40 Ala. 684. The evidence necessary to corroborate an accomplice need not be of itself sufficient to warrant a conviction. Lumpkin v. State, 68 Ala. 56.

In Bradley v. State, 19 Ala.App. 578, 99 So. 321, 322, this court said: "Cor-roborate means to strengthen, not necessarily the proof of any particular fact to which the witness has testified, but the probative, criminating force of his testimony."

In the instant case we hold that the lower court properly held there was sufficient evidence of the corroboration of the accomplices' testimony to warrant the submission of this case to the jury for its consideration.

As to the foregoing we hold that the testimony of State witness Dr. C. T. Jones comes within the stated rule. This doctor witness was called to attend upon Mrs. Hassie Spann, shortly after the alleged commission of the offense, and at that time she was complaining of abdominal pains and was having uterine contractions, etc. The evidence shows he was called to her shortly after the instrument used to effect the abortion had been removed from her womb. It is clearly deducible from the evidence that Mrs. Spann, 32 years of age, and already the mother of several children, was a robust healthy woman, and all of the evidence discloses without dispute this woman had a miscarriage the second day after the doctor was called to attend her. Further, that the child in question was fully developed for one of that period of pregnancy. This evidence, and other of like import, justified the court in its ruling in this connection, and said ruling meets the approval of this court.

Thus, the confession of the defendant, supra, made freely and voluntarily by the defendant, as is shown upon its face, was properly admitted in evidence by the court; and of course is conclusive of this case. The court properly and without error overruled defendant's motion for a new trial.

While not necessary to the conclusion here reached, we feel impelled to quote with our full approval, a quotation incorporated by our former associate Judge Brown, in the case of Trent v. State, supra. Viz:

"The statute as amended imposes criminal responsibility not only upon those who may administer the drug or substance, or use an instrument, but upon all who 'aid, abet, advise, or prescribe for the same,' unless the administration of the drug or substance or the use of the instrument is necessary to preserve the life of the pregnant woman. Its manifest purpose is to restrain after conception an un-

warranted interference with the course of nature in the propagation and reproduction of human kind, and—'we are forced to concede that when in the red-hot furnace of vitality two germs, male and female, are brought together, that fuse themselves into one, a new being, crowned with humanity and mentality, comes into life. If this be true, does not the new being, from the first day of its uterine life, acquire a legal and moral status that entitles it to the same protection as that guaranteed to human beings in extrauterine life? Indeed, should it not receive a greater protection for the reason that to the nature of a human being it adds the condition of utter helplessness, a condition that should appeal in mute, but sublime, eloquence to the manhood, the womanhood, and above all, to the motherhood, of those who can shield and protect it? Lives there a man or woman who would assault a little, laughing prattling babe? If that be a crime from which the coldest-blooded villain would recoil, how much more a crime to assault and slay an innocent babe quietly sleeping in what should be an impregnable fortress—a baby whose voice is hushed and cannot be raised in piteous cry for mercy or for help!' " [15 Ala.App. 485, 73 So. 836.]

This record does not disclose what, if any, action has been taken against the father and mother of the murdered child, who so blatantly admit their atrocious conduct in connection with the crime here charged against this appellant. If these two persons have been permitted to go unpunished it is certainly, in our opinion, a travesty upon justice, and the law and order by which we are governed.

Affirmed.