The appellant, Mitchell Lee Minor, also known as Omar Shariff Rahman and also known as James Cunningham, was convicted in the Circuit Court of Talladega County for the offense of first degree robbery, and he was sentenced under the Habitual Felony Offender Act to imprisonment in the penitentiary for life without the benefit of parole. The robbery is alleged to have occurred on January 26, 1982, in the City of Sylacauga. It involved a jewelry store known as Griffin's Jewelry Store, and it is alleged that in the process of the robbery the appellant used force against Donald Runyan, who is shown to have been the manager of the store. After the conviction of the appellant, the court set a sentencing hearing for another date, at which time the court received evidence of prior convictions of other felonies, one of which occurred *Page 653 
prior to the enactment of the Habitual Felony Offender Act of this State.
Carrie Lou Machen was employed at Griffin's Jewelry Store on January 25, 1982, the day before the alleged robbery. She testified that a man came into the store and asked to see some ladies' engagement rings. Mrs. Machen showed the man some rings and then Donald Runyan, the manager of the store, showed the rings to the man while Mrs. Machen waited on another customer. Mrs. Machen identified the defendant as being this man. A Mrs. McNeal, Mrs. Machen's sister, who was also an employee at Griffin's Jewelry Store at the time in question, testified that she saw the defendant return to the jewelry store the morning of January 26. He came in and told Donald Runyan that he had come back to look at those diamonds which he had viewed the day before. Mr. Runyan showed the defendant the rings, and about that time Tony Boris came into the store, and the witness, Mrs. McNeal, went to the front to assist another customer. The customer who came in told Mrs. McNeal that he was looking for an engagement ring for his fiancee. Mrs. McNeal showed him some rings and had a conversation with him. About that time, Mrs. McNeal heard a loud voice at the back say, "This is it," and she heard two gunshots. Mrs. McNeal saw blood streaming from Donald Runyan's face immediately after this commotion. She exclaimed, "Oh, my God we are being robbed. Get down." The customer replied, "Yeah, you're being robbed. Get the diamonds on the counter." The clerk began to get the diamonds out of the counter and the man came around and helped place the jewelry in a nylon satchel which he brought with him. She activated the silent alarm with her foot. The man started to open several counters and Mrs. McNeal told him not to do so, because the alarm would go off.
Another witness, Tony Boris, testified that he was in the jewelry store around 10:30 a.m. on January 26, 1982; that Mr. Runyan was helping the defendant when the witness heard a gunshot and upon looking up saw that Mr. Runyan's face was covered with blood. He also saw the customer waving a gun at him, and that "customer" forced him and the bookkeeper into a small storage room. The man told them to stay in the room for fifteen minutes. Mr. Boris identified the defendant as this customer who forced him into the storage room. Mr. Boris observed the defendant for five minutes in the store. He was very well dressed and well clothed. The defendant was leaning on a small brown attache case on the counter at one time. The defendant was in Griffin's Jewelry Store when Mrs. Machen returned to work from a trip which she had made earlier to a bank. When she came in Donald Runyan had his hand over his face and he told her not to get excited and to put her purse and the bank bag down and to come to the back of the store where he was. When she went to the back of the store the appellant was there and had a gun pointed at her. The appellant forced the employees of the store into a backroom and told them not to come out and that if they did it would be "too bad." The appellant went to the front of the store and told Mrs. McNeal to give him her rings, which she did. He put them in his pocket. The other customer then came to the front of the store and said, "It's the police. Get out of here." This man ran out the front door. Mrs. Machen, Mrs. McNeal, and Donald Runyan identified the appellant as the person who committed the acts along with the other man at the front of the store who has not been identified. The appellant was also identified by Donald Runyan as the person in the back of the store with him and to whom he was showing some jewelry and as being the man who had looked at the jewelry the day before. He also identified the appellant as pulling a gun suddenly while viewing some of the jewelry and stating, "Okay . . . this is it." The appellant was also identified as the person who forced Runyan to give him the diamonds and money from the store safe. Jewelry and money in value of more than $100,000 was taken. The operator of a pawn shop in Enterprise, Alabama, identified one of the rings which was offered into evidence as being a ring which she purchased from the appellant, *Page 654 
and this ring was identified as a ring taken from this store at the time of the robbery. The appellant was also identified by a policeman who answered the emergency alarm as being the person whom he saw coming out of the jewelry store in question carrying a briefcase when he answered the emergency alarm at the store. The policeman stated that the appellant turned and re-entered the store, and that he did not see him again on this occasion.
The appellant made a motion to suppress the in-court identification of the appellant made by Carrie Lou Machen. The trial court heard extensive evidence outside the hearing of the jury and overruled the motion of the appellant. He also made a motion to suppress the statements made by the appellant to Captain T.A. Howell on the ground that the totality of the circumstances showed such statements to be involuntary. This motion was also overruled after the court heard evidence outside the hearing of the jury; the appellant also objected to being sentenced under the Habitual Felony Offender Act, both on the ground that this act is unconstitutional as it was applied to him, and also on the ground that the judgment entry did not show that the appellant was represented by an attorney in the prior proceedings leading to convictions which were introduced at the sentencing hearing.
As to the claim of the appellant that the in-court identification of the appellant made by the witness, Carrie Lou Machen, at the trial of the case, the appellant argues that the totality of the circumstances shows that the statements of the witness, Machen, were manifestly subjective. The evidence shows that this witness had not identified the defendant until the night before the trial of the case. She had stated previously that she was too scared to give a description of the appellant or the person who had committed the offense at the time in question. She was present at the preliminary hearing of the defendant in this case and saw the defendant in a group of persons. Her sister had stated to her that, "He is sitting over there," and she then recognized the defendant in the group. She looked at several pictures of people, including pictures of the defendant, on the night before the trial, and she recognized the defendant from these pictures.
The Supreme Court of the United States in the case of Neil v.Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), discusses and condemns identification of defendants in the trial of cases if they are made as a result of suggestive procedures. This rule is recognized in the case of Williamsonv. State, 384 So.2d 1224 (Ala.Cr.App. 1980). The factors to be considered when such question is presented with reference to identification as a test of the validity of the identification are set out in this case. These factors involve, in short, the opportunity of the victim to view the assailant at the time of the crime, the victim's degree of attention given to the defendant at the time, the accuracy of the victim's prior description, the level of certainty demonstrated by the witness at the time of the confrontation, and the length of time between the confrontation and the crime. A review of the evidence in this case, and applying these factors, leads us to the conclusion that there is nothing present in this case which would be sufficient to disallow the evidence of the identification of the accused in this case to go to the jury. It is true that the witness did not give a prior description of the defendant, but this is not sufficient in the opinion of this court to eliminate the testimony of this witness. Reliability of the testimony of the witness in the identification process is the "linch-pin" in determining the admissibility of identification testimony. Weaver v. State,350 So.2d 734 (Ala.Cr.App. 1977). There is nothing in the record to indicate to us that the identification made by this witness is so unreliable that it should not have been presented to the jury.
It is insisted by the appellant that the identification of the appellant by Mrs. Machen at the trial of the case amounted to a counselless line-up. We do not agree with this contention. *Page 655 
The witness was in the audience at the preliminary hearing. The appellant was seated with a group in another area. No one representing the State asked the witness to identify the defendant. From the evidence it appears that only the usual procedure which occurs at a preliminary hearing was followed. The witness did not participate in the preliminary hearing. Whatever occurred between the witness and anyone else at the hearing was a private conversation. We do not think that this is a "line-up" contemplated by the courts in the cases which lay down the rules to be followed for the protection of rights of the accused. Marks v. State, 424 So.2d 1342 (Ala.Cr.App. 1982).
It is further contended by the appellant that the trial court erred in its denial of the motion of the appellant to suppress statements of the appellant made to Captain T.A. Howell for the reason that the totality of the circumstances made such statements involuntary.
The test to be applied in determining whether or not an alleged confession is voluntary involves, like the test in determining the validity of identifications, the totality of the circumstances. The entire circumstances must be examined and the court must determine from those circumstances whether or not the confession was voluntarily made. Obviously, if the court determines that they were not voluntarily made, considering the totality of the circumstances, they must be excluded. See Crawford v. State, 377 So.2d 145 (Ala.Cr.App. 1979). In this case, Captain Howell advised the defendant of his constitutional rights from a "Miranda card," which the officer carried with him. Captain Howell asked the appellant whether he understood his rights and he answered that he did. There is no evidence that he was threatened or coerced or abused in any manner. The appellant told Captain Howell that he would make the statement. The appellant was taking "Tylenol # 3" because of a gunshot wound in his arm; his right arm was in a sling. He had been arrested at the hospital and had been taken to jail after release from the hospital. He was not questioned at the hospital. Captain Howell did not ask Minor to sign a waiver form; his right arm was in a sling. This could have interfered with his signing a waiver.
The true test of determining whether an extrajudicial confession is voluntary is whether the defendant's will was overborne at the time he confessed, making the confession the product of irrational intellect and not of a free will.Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770
(1963).
The appellant was taking an over-the-counter drug, but it appears that he was coherent and he understood his right to remain silent at the time he spoke to Captain Howell. There is no evidence that the appellant was incapacitated beyond a minor injury; medical authorities at the hospital had released the appellant from the hospital at the time the alleged confession was made. Confessions need not be in writing, nor is it necessary for an accused person to sign a waiver of his rights in order to make the statements of the accused admissible in the form of a confession. Alexander v. State, 370 So.2d 330
(Ala.Crim.App.), writ denied, 370 So.2d 332 (Ala. 1979). The court in this case heard extensive voir dire examination of the defendant. The attending circumstances affirmatively disclosed that the statements to Captain Howell were voluntarily made. The duty of determining the voluntariness of a confession is within the sound discretion of the trial court. Crawford, supra. The findings of the trial court as to the voluntariness of a confession, following a hearing held outside the presence of the jury, will not be disturbed on appeal unless contrary to the great weight of the evidence and manifestly wrong. Rush v.State, 397 So.2d 195 (Ala.Cr.App.), writ denied, Ex parte Rush,397 So.2d 197 (Ala. 1981). We are of the opinion that the trial court did not err in admitting the statements of the appellant to Captain Howell into evidence.
We now consider the objections raised by the appellant to the Habitual Felony *Page 656 
Offender Statute of this State. Ala. Code § 13A-5-9 (1975). At the trial of this case there was no question as to the law governing the constitutionality of this statute. Watson v.State, 392 So.2d 1274 (Ala.Cr.App. 1980), cert. denied,392 So.2d 1280 (Ala. 1981); even for convictions prior to the statute; Williams v. State, 393 So.2d 492 (Ala.Cr.App. 1981);Smith v. State, 409 So.2d 455 (Ala.Cr.App. 1981). Since there is no evidence in the record to indicate that the sentencing statute was applied to the appellant in a discriminatory way, the contentions of the appellant seeking to undermine this statute on constitutional grounds are unfounded under the law in effect at the time of the trial of this case. See cases cited above. We must determine, however, whether the sentence meets the standards of the most recent decision of the United States Supreme Court on this subject.
Pending this appeal, the United States Supreme Court decided the case of Solem v. Helm, ___ U.S. ___ , 103 S.Ct. 3001,77 L.Ed.2d 637 (1983). In that case the Court held that the sentence in any case must be proportionate to the crime committed, and if the sentence is not so proportionate it violates the accused's rights under the Eighth Amendment to the United States Constitution. Guidelines are laid down for the trial court to follow in applying the rule of proportionality in imposing sentences. These guidelines include the gravity of the offense, sentences imposed in this jurisdiction on other offenders for more serious crimes, the harshness of the sentence, and others. The Court determined that the prior convictions of Helm were relatively minor and the offense for which he was convicted was relatively minor, being a worthless check charge involving $100. The ordinary maximum punishment for this offense would have been five years' imprisonment and a $5000 fine. The prior convictions in that case were three convictions for third degree burglary, one for obtaining money under false pretenses, one for grand larceny, and a third conviction for driving a vehicle while intoxicated. The Court declared the sentence to be disproportionate to the offense for which it was imposed. This sentence of life imprisonment without parole was said to violate the appellant's Eighth Amendment rights, and the judgment of the trial court was nullified.
In the instant case, the charge for which the defendant was convicted is first degree robbery in which more than $100,000 in money and property was taken; firearms were used, people were intimidated, and one person was violently struck or shot (the evidence is not clear on this point) and suffered much loss of blood. The prior convictions of the appellant in the case under consideration include another robbery, false impersonation and false pretense (two cases), and second degree forgery (two cases). Considering the sentence by the guidelines laid down by the United States Supreme Court in Helm, supra, we have an offender with a record of a former robbery, a crime of violence; he is convicted of another such offense involving much violence; he has four theft-type offenses in addition to the prior robbery as prior offenses. Measuring the sentence by the guidelines laid down in Helm, supra, the gravity of the offense is very high; the sentence imposed is not disproportionate to sentences imposed in this and other jurisdictions for such offenses after a prior conviction for the same type offense. We are of the opinion after measuring this sentence with these and other reasonable standards that the sentence is proportionate to the offense in the light of all of the circumstances of this case.
It is contended by the appellant that the court committed reversible error in admitting into evidence at the sentencing hearing evidence of prior convictions of the appellant in that the judgment entries of the prior convictions did not show that the appellant was represented by attorney at the time of the convictions. In addition to the records which were introduced into evidence, the evidence in the case at the sentencing hearing indicated clearly that the defendant was, in fact, represented by an attorney in each of the prior cases resulting in convictions on which the State bases the operation of the Habitual Felony Offender Statute. There does not appear to be any *Page 657 
law which requires that the name of the attorney appear at any particular place in the record so long as it properly appears that the defendant on trial was represented by an attorney. We are of the opinion that the evidence is uncontradicted that the appellant was represented by an attorney in each of the cases made the basis for the operation of the Habitual Felony Offender Statute, and the evidence of the prior convictions was properly admitted into evidence.
We, therefore, hold that the trial court did not err in the trial of this case, and the judgment is affirmed.
The foregoing opinion was prepared by the Honorable NEWTON B. POWELL, Retired Circuit Judge, temporarily on duty on the court pursuant to § 12-2-30 (b)(6), Code of Alabama 1975; his opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur except HARRIS, J., who concurs in result only.