Charles Lindsey Brown was indicted for robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975. The jury found the appellant "guilty as charged" and, following a sentencing hearing, the trial court sentenced Brown to life imprisonment without parole pursuant to the Alabama Habitual Felony Offender Act.
Robert Glenn testified that on October 1, 1982, he lived with the appellant in Birmingham. He had known appellant for approximately fifteen years. Glenn stated that the week prior to the robbery of J M Beverage, he, the appellant and Cecil Anderson drove to Selma with the intentions of robbing the beverage company. Upon arrival in Selma they discovered that the store was too crowded that day and then they drove back to Birmingham.
On October 2, 1982, the men again drove to Selma for the purpose of robbing J M Beverage. They stopped at a store upon their arrival in Selma and bought some white nylon rope "to tie the people up with" and they cut this rope into strips. They then proceeded to J M Beverage. Glenn and the appellant went inside J M and asked a man whether they could apply for a job. The man told them that J M was not hiring at that time. Glenn and Brown then walked outside and a few minutes later went back in the store. Glenn stated that he "throwed down" on the man with a pistol and he and Brown tied the man up. Glenn further stated that he, Anderson and the appellant had pistols.
Glenn testified that a black man in the warehouse resisted them so they "snatched him down" and "hit him two or three times and kicked him." The three men then left. Once outside they realized they had forgotten the cash box so they returned to the office and took it. Glenn stated that they got approximately $1400.00 and split it between them.
James Bedgood testified that he worked for J M Beverage Company on October 2, 1982. He stated that Willie Jackson, a black man, was working in the warehouse on that day. On the morning of October 2, 1982, Bedgood was in his office at J M when two black men came in inquiring *Page 1175 
about a job. He told them that J M was not hiring and talked with the men for about four minutes. Bedgood stated that Robert Glenn was one of the men and the appellant was the other. The two men left, only to return a short time later brandishing pistols. Glenn ordered Bedgood to give him the money, which Bedgood did. A third man then came into the office and told Glenn to make him open the safe. Bedgood told them the safe was open and they could help themselves. Bedgood then heard someone rustling through the safe behind him. He was then forced to lie down on his stomach and was tied up hand and foot. The men then forced Willie Jackson into the office and tied him up. Bedgood further stated that the men left, then returned to the office, and left again. Bedgood positively identified this appellant as one of the men in the store that morning.
Willie Jackson testified that three black men came to the store that morning, stayed a few minutes, then left. A short while later the men returned. Two of the men came into the warehouse, pointed a gun in his face and forced him into Mr. Bedgood's office. Upon entering Bedgood's office the men tied him up. Jackson stated that the appellant was one of the men in the store that morning. He stated that the appellant was the man who pointed the pistol in his face while forcing him into Bedgood's office.
Jackson further testified that he was shown a photographic lineup by the police. He was able to pick the appellant and Anderson out of this lineup. The first time he was shown the photographic display was a few weeks after the robbery and he positively identified Brown and Anderson at that time. He was shown another photographic lineup the day before trial, some two years later, and again positively identified Brown and Anderson.
 I
Appellant contends that the trial court erred in refusing to grant a mistrial based on prosecutorial misconduct. He specifically alleges that the court erred in refusing to grant mistrials (1) when the prosecutor referred to the appellant as one of the three robbers during his opening statement to the jury venire (R. 10-11) and (2) when the prosecutor asked a witness to point out to the jury the two individuals who assisted him in the robbery.
It should be initially noted that on both occasions the trial court immediately sustained appellant's objection and gave curative instructions to the jury. (See R. 11, 60-61). "The grant or denial of a mistrial is a matter within the sound discretion of the trial court and will only be disturbed upon a showing of manifest abuse." Durden v. State, 394 So.2d 967
(Ala.Crim.App. 1980), cert. denied, 394 So.2d 977 (Ala. 1981);Wright v. State, 421 So.2d 1324 (Ala.Crim.App. 1982); Shadle v.State, 280 Ala. 379, 194 So.2d 538 (1967); Davis v. State,457 So.2d 992 (Ala.Crim.App. 1984).
"The entry of a mistrial is not lightly to be undertaken. It should be only a last resort, as in cases of otherwise ineradicable prejudice. Where error is eradicable a mistrial is too drastic and is properly denied. Chillous v. State,405 So.2d 58 (Ala.Crim.App. 1981); Van Antwerp v. State,358 So.2d 782 (Ala.Crim.App.), cert. denied, 358 So.2d 791 (Ala. 1978);Thomas v. Ware, 44 Ala. App. 157, 204 So.2d 501 (1967)." Woodsv. State, 460 So.2d 291, 296 (Ala.Crim.App. 1984).
The actions of the trial judge were prompt in this cause. The matter objected to was not so prejudicial that it could not be erased from the minds of the jury. In such a case the right to declare a mistrial is a discretionary matter. See Durden, supra; Shadle, supra. "When prejudicial remarks have been made, the trial judge is in a better position than the appellate court to determine whether the remarks were so prejudicial as to be ineradicable. Chambers, supra." Woods, supra at 296. The record in this cause does not support a finding of abuse.
 II
Appellant contends that the reversible error occurred during the prosecutor's *Page 1176 
closing argument. The comment to which the appellant objects is as follows: (R. 229).
 "(Whereupon Mr. Sullivan made a rebuttal closing argument to the jury.)
 "MR. SULLIVAN: I've been practicing law for eight years. I've been working for the State of Alabama for about four years and I've yet to hear a defense attorney tell a jury their client was guilty. If I live the rest of my life —
 "MR. TURNER: That's highly inappropriate. That's prejudicial. What does he expect the defense attorney to do? We move for a mistrial. How in the world do they expect the defense attorney to tell the jury his client is guilty?
 "THE COURT: The statement was improper. This is time for closing argument. I would not grant your motion for mistrial."
The control of closing arguments rests in the broad discretion of the trial judge and where no abuse of discretion is found there is no error. Thomas v. State, 440 So.2d 1216
(Ala.Crim.App. 1983); Robinson v. State, 439 So.2d 1328
(Ala.Crim.App. 1983); Elston v. State, 56 Ala. App. 299,321 So.2d 264 (1975). The trial judge can best determine when discussion by counsel is legitimate and when it degenerates into abuse. Hurst v. State, 397 So.2d 203 (Ala.Crim.App.), cert. denied, 397 So.2d 208 (Ala. 1981); Garrett v. State,268 Ala. 299, 105 So.2d 541 (1958). Although the comment made by the prosecutor was improper, it did not "strike at the jugular of defendant's story" and, therefore, was not prejudicial error. See United States v. Davis, 546 F.2d 583 (5th Cir. 1977) and Stone v. Estelle, 556 F.2d 1242 (5th Cir. 1977). A review of the record and above authorities reveals no abuse of discretion.
 III
Appellant contends that the indictment was defective because it failed to allege a specific amount of money. "While the indictment in this case did not allege a specific amount of money, this defect makes the indictment voidable not void.Edwards v. State, 379 So.2d 336 (Ala.Crim.App. 1979), cert. denied, 379 So.2d 339 (Ala. 1980)." Anderson v. State,480 So.2d 64 (Ala.Crim.App. 1985).
 "Generally, a demurrer is the proper procedure to raise defects in an indictment. Andrews v. State, 344 So.2d 533 (Ala.Cr.App.), cert. denied, 344 So.2d 538
(Ala. 1977). Since a plea to the merits admits the validity of an indictment, a demurrer filed after arraignment and after a plea of not guilty is properly stricken. Underwood v. State, 248 Ala. 308, 27 So.2d 492 (1946). The right to file a demurrer is waived unless the demurrer is filed before a plea to the merits. Holloway v. State, 37 Ala. App. 96, 64 So.2d 115, cert. denied, 258 Ala. 558, 64 So.2d 121
(1953). If an indictment is merely voidable and subject to demurrer, the failure to demur will prevent appellate review of the indictment's shortcomings. Williams v. State, 333 So.2d 610
(Ala.Cr.App.), affirmed, 333 So.2d 613 (Ala. 1976)." Edwards, supra at 338.
In this cause the appellant did not object at the time of arraignment. He waited until the time of jury selection on the day of trial. Under Edwards, supra, and Anderson, supra, this objection came too late and, therefore, this indictment is not subject to review by this court.
 IV
Appellant contends that he was convicted on the uncorroborated evidence of an accomplice and, as such, the trial court erred in failing to exclude the evidence and grant a motion for judgment of acquittal.
We agree with the appellant that one may not be convicted on the uncorroborated testimony of an accomplice. However, "[s]uch corroborative evidence does not have to be very strong, or even sufficient to support a conviction, but merely must logically tend to link the accused with the offense. Miller v. State, [290 Ala. 248, 275 So.2d 675 (1973)], supra." Ex parte Scott v.State, 460 So.2d 1371, 1373 (Ala. 1984); Jackson v. State,451 So.2d 435 (Ala.Crim.App. 1984). "It is not necessary *Page 1177 
that such evidence from which the guilt of the defendant can reasonably be inferred is sufficient. Merriweather v. State,364 So.2d 374 (Ala.Crim.App. 1978), cert. denied, 364 So.2d 377
(Ala. 1978)." McConnell v. State, 429 So.2d 662, 666
(Ala.Crim.App. 1983); Craig v. State, 376 So.2d 803
(Ala.Crim.App.), cert. denied, 376 So.2d 807 (Ala. 1979); Ware v.State, 409 So.2d 886 (Ala.Crim.App. 1981). writ quashed,409 So.2d 893 (Ala. 1982).
 "`Corroborative evidence need not directly confirm any particular fact nor go to every material fact stated by the accomplice. Bridges v. State, 52 Ala. App. 546, 295 So.2d 266 (1974); Dykes v. State, 30 Ala. App. 129, 1 So.2d 754 (1941). Corroborative evidence need not directly connect the accused with the offense but need only tend to do so. . . . In certain instances, association with the accomplice tending to show the accused's proximity, chronologically and geographically, to the alleged offense may furnish sufficient corroboration.'" (Citations omitted). Ware, supra at 891.
"Sufficient corroboration of testimony of an accomplice may be furnished by a tacit admission by defendant, by suspicious conduct of defendant, and association of defendant with accomplice, or by defendant's proximity and opportunity to commit the crime." Early v. State, 392 So.2d 548
(Ala.Crim.App. 1980), cert. denied, 392 So.2d 551 (Ala. 1981);Ware, supra; Yarber v. State, 437 So.2d 1319
(Ala.Crim.App. 1981), reversed on other grounds, 437 So.2d 1330
(Ala. 1983), on remand, 437 So.2d 1337 (Ala.Crim.App. 1983). Further, "in determining the sufficiency of corroborative evidence testimony the entire conduct of an accused within reasonable time limits of the date of the offense may be examined." Fuller v. State, 34 Ala. App. 211, 215,39 So.2d 24, 27, cert. denied, 252 Ala. 20, 39 So.2d 29 (1949);Jacks v. State, 364 So.2d 397 (Ala.Crim.App.), cert. denied, 364 So.2d 406 (Ala. 1978).
A review of the testimony in this cause reveals that the evidence was, in fact, sufficient to reasonably infer this appellant's involvement in the crime at issue. Based on the authorities hereinabove cited, the trial judge was not in error in overruling the appellant's motion and properly submitted this cause on this evidence to the jury for their consideration.
 V
The appellant argues that the trial court erred in allowing the in-court identification of the appellant by witnesses Bedgood and Jackson. The evidence shows that on October 2, 1982, James Bedgood was in his office at J M Beverage Company. Two black men came into his office inquiring about a job. He talked with these two men for approximately four minutes. Bedgood identified Robert Glenn and Charles Brown as the two men in his office at that time. Bedgood testified that these men left only to return a short time later. He stated that Glenn came up to him and put a gun in his face. Glenn ordered Bedgood to given him the money and Bedgood did so. Bedgood stated that he could see Charles Brown "at a glance" at the time of the robbery. Bedgood positively identified Charles Brown as being one of the robbers. (R. 148-149). Bedgood stated that he was not able to pick anyone out of a photographic lineup, but he was basing his in-court identification on what he observed in the store on October 2, 1982.
Willie Jackson testified that he was employed by J M Beverage on October 2, 1982. He was working in the warehouse on that morning when he observed three black males enter the store. He stated that two of these men went into the store and the third stayed out in the warehouse. A short while later he noticed the men in the area again. This time two of the men came in the warehouse with him and the other man was in the store. These two men forced him into the store and into Mr. Bedgood's office. One of these men had a pistol pointed to Jackson's face. Jackson testified that this man had a scar on his forehead and pointed out Charles Brown as being that individual. (R. 164-165). Jackson further testified that he had identified *Page 1178 
the appellant, Brown, and one of the other two men from a photographic lineup after the robbery and again the day before the trial some two years later. He stated that there was no doubt in his mind that appellant was the man pointing the gun at him on October 2, 1982. (R. 168).
 "Whether an in court identification has been so tainted by an extra-judicial identification as to vitiate the in court identification is not to be determined solely by the circumstances of the extra-judicial identification, but all of the circumstances relative to the identification of defendant by the witnesses are to be taken into consideration, and if it is determinable therefrom that an in-court identification was independent of the extra-judicial identification, evidence of the in-court identification is admissible. Matthews v. State, 361 So.2d 1195 (Ala.Cr.App. 1978); Dill v. State, 429 So.2d 633 (Ala.Cr.App. 1982); Raines v. State, 428 So.2d 206 (Ala.Cr.App. 1983)." Miller v. State, 431 So.2d 586, 590 (Ala.Crim.App. 1983).
In Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375,34 L.Ed.2d 401 (1972), the United States Supreme Court listed several factors which should be considered when determining whether an in-court identification has an independent basis. "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neilv. Biggers, 409 U.S. at 199-200, 93 S.Ct. at 382. A review of the evidence in this case, and applying these factors, leads us to the conclusion that there is nothing present in this case which would be sufficient to disallow the eye-witness identification of this appellant in this cause.
"Reliability of the testimony of the witness is the linchpin in determining the admissibility of identification testimony."Weaver v. State, 350 So.2d 734 (Ala.Crim.App. 1977). There is nothing in the record to indicate to us that the identification made by this witness is so unreliable that it should not have been presented to the jury. See Minor v. State, 437 So.2d 651
(Ala.Crim.App. 1983). The two identifications were admissible.
A careful examination of this record reveals no errors. Therefore, the judgment of the trial court is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.