Lawrence Frank Walker, the appellant, was convicted of robbery in the first degree and was sentenced to life imprisonment without the possibility of parole as a habitual felony offender. He raises three issues on this direct appeal from that conviction.
 I.
The appellant contends that the trial court erred in denying his motion for a mistrial which was made when the prosecutor questioned the jury venire about "gangs" and as to whether any member of the venire would be afraid to serve as a jury member.
The appellant was charged with the robbery of a clerk at the Jackson Discount Food Mart. The prosecutor questioned the jury venire about gang activity and membership without objection. Defense counsel first objected (on the ground of relevancy) to the following voir dire question: "Are you aware that the children have to pass through metal detectors, as you have today, at the Anniston Middle School?" R. 28. The trial court sustained that objection and the prosecutor continued her voir dire:
 "MS. JONES [assistant district attorney]: Have any of you or your grandchildren been victimized by gang members?
 "Have any of you been threatened by gang members?
 "Have any of you been contacted in reference to serving as a juror on this particular case?
 "Would any of you be afraid to serve on this particular jury?
 "MR. BRYAN [defense counsel]: Judge, if I could approach the bench, please, sir."
R. 29. Out of the hearing of the jury, defense counsel stated:
 "MR. BRYAN: Judge, I understand these questions about gangs, but now I'm getting concerned. And what's happening here is that Ms. Jones is getting into argument and she's already started that once. And now this is getting beyond legitimate voir dire. And I would ask that you instruct Ms. Jones not to go into that any further. If she has particular questions to ask someone that can legitimately lead to information from this jury, then I have no objection. But, Your Honor, I think that the fact she's telling this jury that they walked through metal detectors, they're already concerned about this.
 "She's already intimated that possibly they may be contacted by gang members by telephone. And now she's asking if they're afraid to serve.
 "Now Judge, I would object to that and I'm — I'm very close to asking for a mistrial right now, Your Honor." R. 29-30 (emphasis added).
At that time the following occurred:
"THE COURT: Any response, Ms. Jones?
 "MS. JONES: Yes, sir. Those are valid venire questions. The fact that this courthouse has got extra security, these jurors have questions about what's going on out there. I want to know if anybody is afraid to serve on this jury.
 "THE COURT: Well, I'm concerned by the questions you've asked that it can possibly lead to an inference, number one, that the defendant is a gang member. We don't have any evidence of that, he's not accused of that. *Page 296 
 "I want to be sure that we try this straight up and down, a robbery first degree case, the charge that we have in the indictment. And I don't want a tone to be set that intimidates this jury panel in any way or attempts to intimate to them anything other than what can be developed by the relevant evidence in the case.
 "So I instruct you to be very careful about further questions along these lines.
"MS. JONES: Yes, sir.
 "MR. BRYAN: Upon further reflection, I'm going to ask for a mistrial now based on what just transpired, the questions just asked of the jury panel. I think I have to ask for that now." R. 30-31.
After further discussion, the prosecutor stated: "[W]e're going to have evidence to prove that [the appellant] is a known gang member of the OTB and the Crips. And that's just going to come out as relevant." R. 32. Again the trial judge stated: "I'm very concerned about this area of questioning." R. 32.
Upon returning to the courtroom, the trial judge instructed the venire on the duty of the jury, cautioned the venire "that anything said during the voir dire examination by the attorneys is not evidence in the case and you are not to take any of it as evidence," and polled the venire to determine whether there was "anyone on this panel who would not be able to sit and be a fair and impartial juror and make their decisions in the case based solely upon the evidence and the law that will come to you in the case." R. 34-35. No venire member responded. The prosecutor did not pursue this line of inquiry or mention "gangs" throughout the remainder of her voir dire questioning.
This case was not "gang-related" and the prosecutor's voir dire questions concerning gangs were clearly improper. See discussion in Part II. However, a motion for a mistrial is properly denied where the trial court takes prompt action to eradicate prejudice arising from improper remarks or questions during voir dire of the venire. See Brown v. State,481 So.2d 1173, 1175 (Ala.Cr.App. 1985). While we note that the trial court did not explicitly instruct the jury to disregard the improper questions by the prosecutor, we think his actions, considered in their entirety, were sufficient "to impress upon the [venire] that [the] improper questions [we]re to be disregarded by them in their deliberations," Howington v.State, 568 So.2d 351, 352 (Ala.Cr.App. 1990), and thus were sufficient to eradicate the prejudicial effects of the questions. Compare Parker v. State, 549 So.2d 989, 992
(Ala.Cr.App. 1992) (where trial court "did not instruct the venire to disregard the comment under scrutiny" and did not poll venire on the matter, trial court's curative instruction, in which it "reiterated and, thus, emphasized the prejudicial remark," was not sufficient to eradicate prejudice caused by remark).
Even if the trial court's actions did not totally remove the prejudice occasioned by the prosecutor's questions, any deficiency in the court's actions was rendered harmless when defense counsel repeatedly broached the subject of the appellant's gang membership during his voir dire questioning of the jury. Cf. Ex parte Williams, 484 So.2d 503, 505 (Ala. 1986) ("[w]here a defendant has testified to essentially the same facts as those contained in an alleged 'confession,' any error in failing to lay the 'Miranda' or 'voluntariness' predicates before the jury is rendered harmless"); Lewis v. State ex rel.Evans, 387 So.2d 795, 807 (Ala. 1980) ("[a] defendant cannot complain of the admission of improper evidence when he himself has testified to the same facts"). After stating for a fact
that the appellant had been a member of a gang, defense counsel questioned the venire as to whether that fact would influence their ability to remain impartial. Although he had complained in making his initial objection that the prosecution "has made . . . [it] impossible now for us to get a fair trial in view of asking them are they now afraid to serve on this jury," R. 31, defense counsel asked the following questions:
 "How many of y'all have been reading the newspapers and watching the news over the last year, two years about gangs? Raise your hand.
"(Hands raised.) *Page 297 
 "How many of you does it alarm to read those things? If it scares you, raise your hand. All of you.
"(Hands raised.)
 "If it didn't, I'd ask you to go back and read those articles and watch those news broadcasts a little closer." R. 66 (emphasis added).
Defense counsel also stated:
 "You already know that Mr. Walker was involved in some gang activity. Let me tell you that he was convicted of two counts of assault in 1989, I believe one count of attempted assault first degree — Excuse me, that was in '90, April 27th of '90. And I think he had a theft of property back earlier in 1989, during the time that he was involved in those activities I just talked to you about. He served three years in the state penitentiary. Almost exactly three years." R. 67-68.
Defense counsel cannot complain on appeal of the trial court's failure to grant his motion for a mistrial based upon the prosecutor's improper questions when, after the trial court had sustained his objection to those questions and had instructed, cautioned, and polled the venire, defense counsel resurrected the very matter to which he had earlier objected by asking questions and making comments that aggravated, confirmed, and exacerbated the questions previously asked by the prosecutor.
 II.
The appellant alleges that the prosecutor "blatantly continued to attempt to bias and prejudice the jury towards the [appellant] by highly improper cross-examination of [the appellant] during the trial" and that the "prosecutor questioned the [appellant] about gang initiation, gang rape, and gang robberies, despite the trial court's sustaining of objections to such cross-examination." Appellant's brief at 17-18. We disagree.
The evidence shows that the appellant was released from prison on March 15, 1992, after serving a three-year sentence. The robbery was committed approximately two months later on May 11, 1992. It appears to this Court that the defense's trial strategy was to admit the appellant's unsavory past and his criminal record, to attribute those matters to his youthfulness and immaturity, and to maintain that after serving a three-year prison sentence he was a changed man.
During the State's case-in-chief, the prosecutor did not make any reference to the appellant's gang membership. However, defense counsel injected that issue into the trial during his cross-examination of State witnesses. See R. 159, 181.
The appellant's mother, Dorothy Richardson, testified as the first defense witness. On direct examination, she detailed the appellant's criminal history. Although she never specifically used the word "gang," her testimony clearly implicated that the appellant was a member of a gang. She testified that the appellant had become "famous" to some people; that he was a "Robin Hood" to some; and that the newspaper had portrayed him as "a robber and a kidnapper and a rapist." R. 339. She testified: "From the way the paper and the news media made him out, he was like Malcolm X, Jessie James, all rolled into one." R. 340. On cross-examination, when the prosecutor sought to determine whether the appellant had been looking for a job after his release from prison, Mrs. Richardson stated: "He would go looking for a job, but — you know, I mean, how many people are going to give Charles Manson[1] a job?" R. 339.
In an unresponsive answer on cross-examination, she volunteered that the appellant was a member of a gang. R. 340. Only after that comment did the prosecutor make specific inquiry into the appellant's gang membership and elicit from Mrs. Richardson testimony that the police had "said" that the appellant was the gang leader. R. 340. On redirect examination, Mrs. Richardson testified that, after his release from prison, the appellant "stayed away from those people, them lowdown animals that he was hanging *Page 298 
with," and "he has changed. A lot. You wouldn't have liked him in '89." R. 352, 353.
Gang activity was not mentioned again until the appellant testified in his own behalf. On direct examination, defense counsel elicited the fact that prior to his imprisonment, the appellant had been "involved with a youth gang in this area called the OTB's." R. 384. The appellant testified that before his arrest for the offense for which he was imprisoned, he and his girlfriend, S.E., stayed for three days in a house owned by State's witness Sonya Bealyer with 15 or 20 other "young guys" where "everybody" was using drugs, and where Bealyer would be in a room having sex with a majority of the "guys." R. 387-89. The appellant stated that "it was like — in the movies, you know, like people who have a party at their house all day, all night." R. 391. On direct examination, the appellant testified that while he was at that house and apparently wanted by the police, "some little group — motorcycle group starts surrounding the house with guns because they were saying that the girl [S.E.] was kidnapped and the girl was tied up, being raped and all that. That was just rumors, rumors out that the girl was kidnapped and raped." R. 392.
Defense counsel elicited the appellant's testimony on direct examination that the appellant had pleaded guilty to three assaults and one attempted murder. R. 396. The appellant stated that "the life that I lived before, I ain't going to live that no more because I was — I was childish in them days. I used to do some crazy stuff. I used to do some crazy things, but then I changed. So I ain't gonna be around them [gang members]." R. 404. The appellant testified that after his return from prison he was unable to get a job because of his criminal record. R. 405.
On cross-examination of the appellant, the following occurred:
 "Q. [prosecutor] What about these . . . folks that have been sitting over here in the back row wearing all their L.A. Raiders attire?
 "MR. BRYAN [defense counsel]: Judge, I'm going to object — Judge, I object.
"THE COURT: Sustain.
 "MR. BRYAN: And I ask the Judge to instruct this jury to disregard these statements and to have it stricken from the record, Judge. And I would like to approach the bench, if I can.
 "THE COURT: Just a moment. I have sustained the objection. The members who might be in the audience, this is an open courtroom. Anyone may come into this courtroom. The fact that people may be in the courtroom or not has nothing whatever to do with this trial.
 "I instruct the jury to disregard the opening part of any statement or questioning by the prosecutor as to this last matter.
 "MR. BRYAN: Judge, may I have a sidebar, please, sir?
 "THE COURT: Let me first ask the members of the jury if there's anyone on this jury panel who cannot follow that instruction which I've just given you to disregard any reference to members of the audience. If you cannot follow my instructions, please raise your hand.
"Let the record show there are no hands raised.
"Do you want a sidebar?
"MR. BRYAN: Yes, if Your Honor please.
 "(Whereupon, a sidebar conference was had out of the jury's hearing as follows:)
 "MR. BRYAN: Judge, I now ask for a mistrial. Again, Ms. Jones has attempted to bring in facts that these people are in this courtroom, that they are present and are interested in the outcome of this trial and that this jury should be aware of their presence.
 "And, Judge, I would ask now that that was — that that comment was completely uncalled for and that I'm afraid that now they can't — from what we began with at the beginning of this during voir dire she's now done the same thing. And I asked for a mistrial on that, that now again is what has happened.
 "The prejudice we suffered in the beginning of this trial has now been reinforced. And I ask for a mistrial.
"THE COURT: Ms. Jones? *Page 299 
 "MS. JONES: Judge, during this entire trial the defendant has interjected gang activity, admitted that he was part of a gang in the past, all of this gang information. The question was not elicited to tie in any gang activity. He denied that he wanted to be called L.A., but yet he wears all this L.A. gang paraphernalia.
 "And I just wanted to ask him the question, 'Why are all these people in the courtroom?' If that's just a coincidence, that goes to his credibility. He's on the stand, he's testifying. That's a proper question under the circumstances.
 "THE COURT: All right. I have ruled on the objection made to the lead-in, which may have been possibly a question that was to be asked concerning the people in the audience. Sustained the objection, instructed the jury to strike or disregard the question. Told them who may or may not be in the audience has nothing to do in the case with the issue that we have in the case. The jury has stated to me that they can follow my instructions.
 "Based upon all of that, the motion for mistrial is hereby denied. But now, we don't need to make any other allusions to who may or may not be in the courtroom.
 "MS. JONES: At this time I would like to ask from the Court if the state will be permitted to go into gang activity.
"THE COURT: Concerning Mr. Walker, yes.
"MS. JONES: Right.
 "THE COURT: Not anyone else. An allusion that people in the audience are members of a gang, it's a free society, people can wear what they choose to wear." R. 435-39.
Defense counsel made no further objections until the prosecutor questioned the appellant about "[t]his girl that was supposedly raped and tied up and being held in that apartment or whatever." At that point the following occurred:
 "Q. [MS. JONES] Isn't it a fact that some gangs as their initiation would have members do crimes such [as] robberies or rapes?
 "MR. BRYAN: Your Honor, I'm going to object —
"THE WITNESS: Please don't —
 "MR. BRYAN: Just a minute. I object, Your Honor. That is not relevant.
"THE COURT: Sustain.
 "Q. Did your gang, the OTB gang, have as part of it's initiation a gang rape?
"MR. BRYAN: Judge, I object. That's not relevant.
"THE COURT: Sustain. R. 449.
We begin our discussion of this issue by noting that "gang activity" had absolutely nothing to do with the actual robbery in this case. There was no evidence that the robbery was "gang-related." In Ex parte Thomas, [1993] 625 So.2d 1156
(Ala. 1993), the Alabama Supreme Court held that in a prosecution for a murder resulting from a "drive-by shooting," reversible error occurred when the prosecutor deliberately elicited irrelevant and highly prejudicial testimony concerning the defendant's gang membership, and the trial court overruled defense counsel's objection — in spite of the fact that defense counsel refused the trial court's offer of curative instructions. In that case, the Court noted that where testimony of a defendant's gang membership is irrelevant, it is "highly prejudicial" and inadmissible: "In light of the massive media coverage of gang violence in contemporary society, the assertion that a defendant's membership in a gang called the 'Vice Lords' will not prejudice him in the eyes of the jury is simply untenable." 625 So.2d at 1157.
However, the Alabama Supreme Court indicated that such prejudicial testimony could be eradicated by the sustaining of the objection and the giving of curative instructions.
 "[A] mistrial is a drastic remedy, to be used only sparingly and only to prevent manifest injustice, and . . . the decision of whether to grant a motion for a mistrial rests within the sound discretion of the trial court. . . . [U]nder certain circumstances prejudicial testimony may be eradicated by curative instructions by the trial court."
Thomas, 625 So.2d at 1157 (citations omitted). *Page 300 
This case is distinguishable from Thomas. Here, the trial court sustained the appellant's objection, instructed the jury to disregard, and polled the jury to determine whether the comment had prejudiced any of its members. The trial court acted within its discretion in denying the motion for a mistrial.
 "There is a prima facie presumption against error when the trial court immediately charges the jury to disregard improper remarks or answers. Desimer v. State, 535 So.2d 238
(Ala.Crim.App. 1988); Dixon v. State, 476 So.2d 1236
(Ala.Crim.App. 1985); Elmore v. State, 414 So.2d 175
(Ala.Crim.App. 1982). 'A motion for mistrial implies a miscarriage of justice and should only be granted where it is apparent that justice cannot be afforded.' Dixon at 1240; Young v. State, 416 So.2d 1109 (Ala.Crim.App. 1982). 'A trial judge is allowed broad discretion in determining whether a mistrial should be declared, because he is in the best position to observe the scenario, to determine its effect upon the jury, and to determine whether the mistrial should be granted.' Dixon at 1240; Elmore. A mistrial is an extreme measure and should be denied when the prejudicial quality of the comment can be eradicated by curative instructions. Dixon; Young; Elmore."
Garrett v. State, 580 So.2d 58, 59-60 (Ala.Cr.App. 1991).
 "A declaration of a mistrial indicates a miscarriage of justice and is granted only where it is clearly manifest that justice cannot be insured. Chesson v. State, 435 So.2d 177, 181
(Ala.Cr.App. 1983); Long v. State, 370 So.2d 354
(Ala.Cr.App. 1979).
 "Where the trial court immediately instructs the jury not to consider a fact, that instruction, in effect, removes or excludes that matter from the jury's consideration, and the prejudicial effect of the statement is deemed to be cured by such instruction. Bradley v. State, 450 So.2d 173, 176
(Ala.Cr.App. 1983); Richardson v. State, 374 So.2d 433 (Ala.Cr.App. 1979). The trial judge's immediate charge to the jury to disregard an impropriety raises a prima facie presumption against error. Kelley v. State, 405 So.2d 728 (Ala.Cr.App.), cert. denied, 405 So.2d 731 (Ala. 1981).
 " 'The entry of a mistrial is not lightly to be undertaken. It should be only a last resort, as in cases of otherwise ineradicable prejudice. Where error is eradicable a mistrial is too drastic and is properly denied.' Woods v. State, 460 So.2d 291, 296 (Ala.Cr.App. 1984); Chillous v. State, 405 So.2d 58 (Ala.Cr.App. 1981).
 " 'When prejudicial remarks have been made, the trial judge is in a better position than the appellate court to determine whether the remarks were so prejudicial as to be ineradicable.' Chambers v. State, 382 So.2d 632, 635
(Ala.Cr.App.), cert. denied, 382 So.2d 636
(Ala. 1980)."
Soriano v. State, 527 So.2d 1367, 1371 (Ala.Cr.App. 1988).
 "Where the trial court immediately instructs the jury not to consider a fact, that instruction in effect removes or excludes that matter from the jury's consideration. The prejudicial effect of the statement is deemed to be cured by such instruction. Richardson v. State, 374 So.2d 433
(Ala.Cr.App. 1979). The trial judge's immediate charge to the jury to disregard an impropriety raises a prima facie presumption against error. Kelley v. State, 405 So.2d 728 (Ala.Cr.App.), cert. denied, 405 So.2d 731 (Ala. 1981)."
Bradley v. State, 450 So.2d 173, 176 (Ala.Cr.App. 1983). "A mistrial will not be granted on motion of defendant where the court has sustained his objections to alleged improper argument and excluded it from the jury's consideration, unless it clearly appears that the defendant's rights have been so prejudiced as to render a fair trial a matter of grave doubt."Watson v. State, 266 Ala. 41, 44, 93 So.2d 750, 752 (1957).
"The trial court immediately polled the jurors individually and determined that each could and would disregard that testimony, therefore curing any prejudicial error that may have occurred. Kendrick v. State, 444 So.2d 905 (Ala.Cr.App. 1984);Wood v. State, 416 So.2d 794 (Ala.Cr.App. 1982). This prompt and thorough action by the trial court creates a prima facie presumption against error. See cases collected in Wadsworth *Page 301 v. State, 439 So.2d 790, 793 (Ala.Cr.App. 1983)." Scott v.State, 473 So.2d 1167, 1174 (Ala.Cr.App. 1985), abrogated on other grounds, McKinney v. State, 511 So.2d 220 (Ala. 1987).
However, in this case, we need not rely solely upon the presumption against error arising from the prompt action of the trial court. The appellant cannot be heard to complain about " 'about exploration of the issue . . . which he himself improperly injected into the trial.' [Morgan v. State,440 So.2d 1240, 1241 (Ala.Cr.App. 1983)]. 'Rebuttal evidence, even evidence of prior crimes, is generally admissible within the sound discretion of the trial court. Vincent v. State, 231 Ala. 657,165 So. 844 (1936); Jones v. State, [362 So.2d 1303
(Ala.Cr.App. 1978)]; Norris v. State, 429 So.2d 649
(Ala.Cr.App. 1982).' Peterson v. State, 452 So.2d 1372
(Ala.Cr.App. 1984)." Campbell v. State, 508 So.2d 1186, 1189
(Ala.Cr.App. 1986). "The state may examine a witness on redirect as to matters injected into a case on cross-examination by the defense." Hollingsworth v. State, 549 So.2d 110, 111
(Ala.Cr.App. 1988), and cases cited therein. The questions about gang activity asked by defense counsel on cross-examination of State witnesses and on direct examination of defense witnesses "opened the door" for the prosecutor's cross-examination of the appellant.
The appellant's motion for a mistrial was properly denied.
The very mention of gang activity by the prosecutor in the trial of a case that is itself not gang-related and to which gang activity has no connection is a sure way to invite a reversal on appeal. However, a reversal is not required in this case because defense counsel repeatedly injected the objectional subject matter before the jury, and the experienced trial judge issued prompt curative instructions.
 III.
The appellant's motion for a judgment of acquittal was properly denied. The victim positively identified the appellant as the man who put his hand in the cash register and shot him twice. Other witnesses positively identified the appellant and placed him at the scene of the crime.
" 'Conflicting evidence presents a jury question not subject to review on appeal, provided the State's evidence establishes a prima facie case.' " Carroll v. State, 492 So.2d 323
(Ala.Cr.App. 1986). Here there was sufficient legal evidence presented by the State to allow the jury to conclude beyond a reasonable doubt that the appellant was guilty of this robbery in the first degree. " 'The testimony of the victim of the alleged robbery which was offered to establish the identity of the appellant as one of the alleged robbers presented a jury question on that matter.' " Lomax v. State, 359 So.2d 832, 835
(Ala.Cr.App.), cert. denied, 359 So.2d 836 (Ala.), cert. denied, 439 U.S. 969, 99 S.Ct. 461, 58 L.Ed.2d 428 (1978). "The victim made a positive and unequivocal in-court identification of the appellant. Therefore, whether the appellant was guilty of robbery was a jury question. Vaughn v. State, 57 Ala. App. 134, 326 So.2d 662 (1976). Testimony of the victim of the alleged robbery which was offered to establish the identity of the defendant as the alleged robber presented a jury question on that issue. Lambert v. State, 55 Ala. App. 669, 318 So.2d 364
(1975)." Baker v. State, 344 So.2d 547, 551 (Ala.Cr.App. 1977).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] This Court takes judicial notice of the fact that the name "Charles Manson" is synonymous with murder and "some particularly terrible crime." See prosecutor's comment inJackson v. State, 516 So.2d 726, 748 (Ala.Cr.App. 1985), remanded on unrelated grounds, 516 So.2d 768 (Ala. 1986).